## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN OF FLORIDA

| | |
|---|---|
| Wendy Koutouzis, on behalf of herself and all other similarly situated individuals,<br><br>Plaintiff,<br><br>vs.<br><br>Publix Super Markets, Inc.,<br><br>Defendant. | **Case No.:**<br><br>**JURY TRIAL DEMANDED** |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Wendy Koutouzis ("Plaintiff"), by and through her undersigned counsel, upon personal knowledge as to herself and upon information and belief as to all other matters, allege as follows:

1.  Plaintiff brings this action against defendant Publix Super Markets, Inc. (referred to herein as "Publix" or "Defendant"), on behalf of herself and all other similarly situated individuals who were overcharged by Publix for foods that were sold through various deceptive pricing schemes (hereinafter sometimes referred to as the "Products").

## SUMMARY FACTUAL ALLEGATIONS

2.     This is a class action against Publix for implementing a deceptive scheme, through which Publix falsely claimed that foods sold by weight, such as meats, cheeses, and deli products, weighed materially more than the actual weight of the products.

3.     Specifically, when a price reduction is advertised for one of the Products, instead of charging the reduced sale price multiplied by the weight of the product, Publix' point of sale checkout system ("POS") automatically increases the weight of the product, so that the consumer does not receive the sale price.

4.     For example, during the week of January 18, 2025, Publix advertised that Publix Extra Lean Pork Tenderloin was on sale for $4.99 per pound, for a savings of $2.00 per pound, from its regular price of $6.99 per pound.

5.     The advertisement was displayed in front of the pork tenderloin products and in Publix' circular as follows:

2





6.     Plaintiff purchased a package of Publix Extra Lean Pork Tenderloin that weighed 2.83 pounds per the label on said product.

7.     However, Publix's changed the weight of the Publix Extra Lean Pork Tenderloin that Plaintiff purchased to 3.96 pounds as follows:



8.     Most customers do not realize that the weight of the product has changed because Publix' POS is programmed so that the total price of the

product matches the total price on the customer's receipt or the POS screen, so to avoid detection.

9.     And, the customer's receipt does not list the weight of the product but only the alleged savings and the total price of the product.

10.    If the customer is not able to see the checkout screen, which is the case with non-self-checkout lanes, the customer will never know that the weight was changed.

11.    Publix also falsely claims on the customer's receipt that the customer obtained a $7.92 savings as a result of the sale price as follows:



12. As can be seen from the above example, although the POS screen states that the customer is receiving the $4.99 sale price for the pork tenderloin, the customer does not receive the sale price because the weight of the product was artificially inflated to an amount that allowed the POS and customer receipt to show a matching total price, so to avoid detection by the customer.

13. In this example, Publix should have charged Plaintiff 2.83 pounds multiplied by $4.99, for a total price of $14.12.

14. Instead, Publix charged Plaintiff $19.78, or $5.66 more, which amounts to a 40% overcharge.

15. As evidenced from above, Publix' actions are clearly deceptive and unfair to consumers.

16. Publix is wrongfully diverting customers' hard-earned money to itself by implementing a POS that is purposefully programmed to change the weights of products resulting in inflated sales revenues for the company.

17. Publix is an employee-owned company and is the largest employee-owned company in the United States.

18. Publix employees receive dividend checks from Publix based on the income and profit generated by the company and its stores.

19.     As such, employees are incentivized to not change the fraudulent POS system or otherwise alert consumers of Publix' deceptive weights scheme so that Publix generates inflated income and profits.

20.     Employees, including cashiers, customer service attendants, and department managers, do not only fail to alert customers, but insist purposely that the customer is wrong, and that the savings were already applied.

21.     Publix and many of its employees also implement other schemes to inflate Publix' revenues.

22.     For example, Publix regularly keeps previous week advertisement specials/reduced-price sales signs up even though the sales expired.

23.     Publix also regularly provides incorrect pricing per unit data for baby formula.

24.     Specifically, Publix regularly displays a lower price per ounce on the stickers on the shelves when the customer never receives the lower price per unit as advertised.

## **THE PARTIES**

25.     Plaintiff Wendy Koutouzis is an individual consumer over the age of eighteen (18), who resides in the state of Florida.

26.     Defendant, Publix Super Markets, Inc., a Florida corporation, is a supermarket chain headquartered in Lakeland, Florida. Founded in 1930, Publix is the largest employee-owned company in the United States.[1]

27.     Publix operates throughout the Southeastern United States, with locations in Florida, Georgia, Alabama, South Carolina, Tennessee, North Carolina and Virginia.

28.     Publix stands as one of the largest U.S. regional grocery chains. Locations are found as far north as Stafford, Virginia, as far south as Key West Florida, while the westernmost location is in Mobile, Alabama. Today, the state of Florida still has the largest number of stores, with 872, representing about two-thirds of the outlets. As of February 2025, Publix employs about 255,000 people. *Id*.

29.     In 2024, Publix was ranked No. 3 on Forbes' 2024 list of America's Largest Private Companies, and is the largest in Florida.[2]

30.     The company's 2023 sales totaled US $57.1 billion, with net earnings of $4.3 billion.[3]

---

[1] *See* https://corporate.publix.com/about-publix/company-overview/facts-figures.

[2] *See* https://www.forbes.com/lists/top-private-companies/.

[3] *See* Publix' Form 10-K Annual Report for the for the fiscal year ended December 30, 2023, at pp. 11-12, located at https://www.publixstockholder.com/financial-information-and-filings/sec-filings.

31.    The number of Publix' storelocations by state are as follows:

| State | Supermarkets as of February 2025 (inclusive of other categories) |
|---|---|
| Florida | 872 |
| Georgia | 217 |
| Alabama | 94 |
| South Carolina | 68 |
| Tennessee | 59 |
| North Carolina | 55 |
| Virginia | 23 |
| **Total** | **1389** |

32.    Publix, at all times material hereto, was registered and conducting business in Florida, maintained agents for the customary transaction of business in Florida, and conducted substantial and not isolated business activity within this state.

33.    The advertising and POS for the Products at issue in this case were created, designed, and/or approved by Publix and/or its agents.

34.    The advertised sale prices for the Products were designed to encourage consumers to purchase the Products and reasonably misled reasonable consumers, including Plaintiffs and the Class into purchasing the Products. Publix markets and distributes the Products, and is the company

that created and/or authorized the unlawful, fraudulent, unfair, misleading and/or deceptive advertising and POS for the Products.

35.     Plaintiffs allege that, at all times relevant herein, Publix and its subsidiaries, affiliates, and other related entities and suppliers, as well as their respective employees, were the agents, servants and employees of Publix and at all times relevant herein, each was acting within the purpose and scope of that agency and employment.

36.     In addition, Plaintiff alleges that, in committing the wrongful acts alleged herein, Publix, in concert with its subsidiaries, affiliates, and/or other related entities and suppliers, and their respective employees, planned, participated in and furthered a common scheme to induce members of the public to purchase the Products by means of untrue, misleading, deceptive, and/or fraudulent representations, and that Publix participated in the making of such representations in that it disseminated those misrepresentations and/or caused them to be disseminated.

37.     Whenever reference in this Class Action Complaint is made to any act by Publix or its subsidiaries, affiliates, distributors, retailers and other related entities and suppliers, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of Publix committed, knew of, performed, authorized, ratified and/or directed

that act or transaction on behalf of Publix while actively engaged in the scope of their duties.

## JURISDICTION AND VENUE

38.    This Court has original diversity jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because the matter in controversy, exclusive of interests and costs, which includes the purchase price for all sales of the Products in the state of Florida during the past three years, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members, and some of the members of the class are citizens of states different from Publix.

39.    Venue is proper pursuant to 28 U.S.C. § 1391. A substantial part of the events or omissions giving rise to Plaintiff's and the class members' claims occurred in this judicial district. Also, Defendant has used the laws within, and has done substantial business in, this judicial district in that it has promoted, marketed, distributed, and sold the products at issue in this judicial district.

40.    There is personal jurisdiction over Defendant because Publix is incorporated in Florida and its executive offices are in Florida.

41.    Further, because Publix' conduct of falsely inflating the weights of the Products, occurred in Florida, and in Publix stores in Florida, Publix is subject to personal jurisdiction in Florida.

42.     Finally, because the deceptive scheme originated in Florida, Florida's Deceptive And Unfair Trade Practices Act applies to purchasers of the Products in Publix stores located in Georgia, Alabama, South Carolina, Tennessee, North Carolina and Virginia.

## FACTUAL ALLEGATIONS

43.     Publix is engaging in a deceptive weighting scheme by programming its point of sale check out system to automatically adjust the weights of products at checkout so to inflate sales revenues and profits for the company.

44.     At the time of purchase, the Defendant represented that the product weighed [X units of weight].

45.     However, after the transaction was initiated, the Defendant unilaterally and without notice increased the weight of the product to [Y units of weight], thereby increasing the total price paid by the Plaintiff.

46.     The Defendant's practice of increasing the weight of the product after advertising a specific price per unit of weight is deceptive, misleading, and designed to inflate the total price paid by consumers.

47.     Because the weights are not disclosed on the customer receipt, if the customer does not notice the change in weight on the checkout screen, customers may never know that they were overcharged.

48.     The Defendant's actions have caused the Plaintiff and other similarly situated consumers to suffer financial harm by paying more for the product than was originally advertised and agreed upon.

49.     The Defendant's conduct is part of a pattern or practice of deceptive trade practices aimed at increasing profits at the expense of consumers.

50.     For example, on January 10, 2025 Publix advertised that Kentucky Legend Turkey Breast went on sale for $7.99 per pound, a $2.00 per pound savings from its regular price of $9.99 per pound.

51.     The advertised sale price was placed in front of the turkey breast as shown here:



52.     Plaintiff purchased a package of Kentucky Legend Turkey Breast that weighed 1.75 pounds.

53.     Plaintiff should have paid 1.75 pounds multiplied by $7.99, for a total of $13.98.

54.     However, Plaintiff was charged $17.48 for the 1.75 pounds of Kentucky Legend Turkey Breast.

55.     Publix claims that Plaintiff enjoyed a savings of $4.38 as a result of the sale for the Kentucky Legend Turkey Breast as follows:



56.    However, Plaintiff did not obtain any savings from her purchase.

57.    Instead, Publix falsely claimed on its POS that the Kentucky Legend Turkey Breast that she purchased weighed 2.19 pounds and charged her $17.48, as follows:



58.    Plaintiff should have been charged 1.75 pounds multiplied by $7.99, for a total of $13.98, but was improperly charged 2.19 pounds multiplied by $7.99, for a total of $17.48, a $3.50 overcharge, 25% more than she should have been charged.

59.     On January 18, 2025, Plaintiff purchased a package of Kentucky Legend Smoked Ham after it went on sale for $5.49 per pound, from its regular price of $7.39 per pound.

60.     The advertisement was on Publix' website as follows:



61.     Although the label on Plaintiff's Kentucky Legend Smoked Ham stated that it weighed 1.92 pounds, Publix' POS changed the weight to 2.58 pounds as follows:



62.     Publix claimed on Plaintiff's receipt that she saved $4.90 as a result of the sale price for the Kentucky Legend Smoked Ham as follows:



63.     However, Plaintiff did not obtain any savings as a result of the sale because she should have been charged $5.49 multiplied by 1.92 pounds, for a total of $10.54. Instead Plaintiff was charged $14.19, resulting in $3.65 more, a 35% overcharge.

64.     In January of 2025, Publix announced a sale on Publix Extra Lean Pork Loin Tenderloin for $4.99 per pound, from its regular price of $6.99 per pound:



65.    Plaintiff purchased a package of Publix Extra Lean Pork Loin Tenderloin that weighed 2.52 pounds, which Plaintiff confirmed the weight as follows:



66.     Again, Publix' POS changed the weight of Plaintiff's Publix Extra Lean Pork Loin Tenderloin as follows:



67.    Again, Publix claimed that she saved $7.06 on her receipt as a result of the sale price for Publix Extra Lean Pork Loin Tenderloin:



68.    Plaintiff should have been charged $4.99 multiplied by 2.52 pounds, for a total of $12.57, however, she was improperly charged $17.61, which amounts to $5.04 more and a 40% overcharge.

69.     On January 25, 2025, Publix had a sale for Spring Mountain Whole Chicken for $2.49 per pound, from its regular price of $2.99 per pound:



📍 Fresh Meat

**Springer Mountain Young Whole Chicken, Grade A, Raised Without Antibiotics**

Save 50¢/lb
**$2.49/lb**  $2.99/lb
Valid 1/23-1/29

Must be purchased in-store



70.     Plaintiff purchased a Spring Mountain Whole Chicken that weighed 4.15 pounds.

71.     Publix charged Plaintiff $12.41 for the 4.15 pound Spring Mountain Whole Chicken and claimed that Plaintiff's chicken weighed 4.98 pounds, 20% more, and that Plaintiff obtained savings of $2.49:



```
                        Publix.
                  Seminole Heights
                 6001 N. Nebraska Ave
                   Tampa, FL 33604
              Store Manager: Brandon Morsey
                    813-238-7720

      F/RICH MOZZ STICKS              8.29    F
      F/RICH MOZZ STICKS              8.29    F
         Promotion                   -8.29    F
      BIGELOW EARL GREY               3.79    F
      BIGELOW EARL GREY               3.79    F
         Promotion                   -3.79    F
      LAYS SALT/VINEGAR               4.99    F
      LAYS CLASSIC CHIPS              4.99    F
         Promotion                   -4.99    F
      BREY VANILLA                    6.71    F
      BREY CHOCLT TRUFFL              6.71    F
         Promotion                   -6.71    F
      BROCCOLI WRAPPED                2.99    F
         You Saved          1.00
      HORMEL BNL HAM HLF             30.20    F
         You Saved         10.08
      S/MTN.WHOLE CHICK.             12.41    F
         You Saved          2.49
      NEWMANS OWN PIZZA               8.79    F
      NEWMANS OWN PIZZA               8.79    F
         Promotion                   -8.79    F
      NWMN OWN STN MARG               9.89    F
      NWMN OWN STN MARG               9.89    F
         Promotion                   -9.89    F
      NWMN OWN STN MARG               9.89    F
      NWMN OWN STN MARG               9.89    F
         Promotion                   -9.89    F
      SUNSHINE STATE EGG              5.29    F
      SUNSHINE STATE EGG              5.29    F

      Order Total                   108.53
        Sales Tax                     0.00
      Grand Total                   108.53
   Credit          Payment          108.53

   Change                             0.00

Savings Summary
   Special Price Savings            65.92
**************************************
*        Your Savings at Publix      *
*               65.92                 *
**************************************
```

72.     Plaintiff should have been charged $2.49 multiplied by 4.15 pounds, for a total of $10.33, however, she was improperly charged $12.41, which amounts to $2.08 more, a 20% overcharge.

73.     On January 25, 2025, Publix also advertised that the Hormell Cure 81 Half Ham was on sale for $5.99 a pound, $2.00 off its regular price of $7.99:

24





74.     Plaintiff purchased a Hormell Cure 81 Half Ham that weighed 3.78 pounds:



75.     Publix' POS changed the weight of Plaintiff's Hormel Ham to 5.04 pounds, instead of the actual 3.78 pound weight, and charged Plaintiff $30.20, when she should have been charged $22.64, a 33% overcharge.

76.     Publix' also falsely claims that Plaintiff saved $10.08 on her Hormel Ham purchase as evidenced by the receipt cited above in paragraph 71.

77.     On February 15, 2025, Plaintiff purchased another Hormel Ham that was on sale for $5.99 per pound and Publix' POS increased the weight of the ham from 3.77 pounds to 5.03 pounds as follows:



78.   Publix charged Plaintiff $30.12, when she should have been charged $22.58, another 33% overcharge.

79.   Publix' also falsely claims that Plaintiff saved $10.06 on her Hormel Ham purchase as evidenced by the following receipt:



80.     Publix also regularly artificially increases the weight for its weighted cheeses.

81.     For example, in November of 2024, Publix advertised a sale for Publix Deli Cranberry Cheddar Cheese that was $8.99 per pound, down from $9.99 per pound.

82.     On November 9, 2024, Plaintiff purchased the following package of Publix Deli Cranberry Cheddar Cheese that was labeled as weighing .60 pounds at the Publix located at 4900 W. Kennedy Blvd, Tampa Florida:



83.    Publix charged Plaintiff $5.99 for the .60 pounds of Publix Deli Cranberry Cheddar Cheese and claimed that Plaintiff obtained savings of $.67 as follows:



84.    However, Plaintiff did not obtain any savings for the Publix Deli Cranberry Cheddar Cheese, because Publix' POS changed the weight of her purchase to .67 pounds, an 11% increase.

85.    Plaintiff should have been charged $5.39, but instead was charged $5.99, an 11% overcharge.

86.    Plaintiff has also been overcharged as a result of Publix' deceptive practice of leaving old, reduced-price sale signs up when the sale expired.

87.    For example, the following reduced-price sales sign for Granny Smith Apples was left up by Publix even though the sale expired:



88.   On January 27, 2025, Plaintiff purchases the Granny Smith Apples listed above and was charged $2.69 a pound as evidenced by the following receipt listed above in paragraph 79.

89.   Plaintiff noticed that Publix deliberately leaves the old signs up so customers think there is a sale. And, even after Plaintiff went to customer service and informed Publix of the incorrect sale sign, when she went back a few days later, the incorrect sales sign was still there.

90.   On February 15, 2024, Plaintiff observed that the Granny Smith Apples were on sale again as per the following sign:



91.     On February 15, 2025, Plaintiff purchases the Granny Smith Apples listed above and was charged $2.69 a pound as evidenced by the following receipt:



92.     Plaintiff has also been overcharged as a result of Publix' false price per unit shelf labeling scheme.

93.     For example, Publix stated that Enfamil ProSobee baby formula cost $1.59 per ounce on the sticker on the shelf as follows:



94.     On January 3, 2025, Plaintiff purchases the 20.9-ounce container of Enfamil ProSobee baby formula and was charged $1.95 per ounce.

95.     Although Plaintiff has obtained refunds for some of the purchases described above, she has not obtained a refund for all of her purchases, including the pork tenderloins.

96.     Publix employees also make the refund process difficult and requires the consumer to repeatedly plead their case to obtain a refund as a result of the deceptive weights.

97.     In multiple instances when Plaintiff complained about an overcharge, the Publix employee insisted that she was wrong.

34

98.    Many times, Plaintiff did not seek a refund even if she noticed the overcharge because she knew it would take a significant amount of time to plead her case and obtain a refund.

99.    Plaintiff is consistently overcharged through Publix' deceptive weighting scheme and seeks to end the practice.

100.   Plaintiff continues to shop at Publix because it is the only full-service grocery store in her area and Publix has products that she cannot reasonably obtain elsewhere.

101.   Publix is aware of the requirement, importance and need that its pricing and weights be accurate, not false, and not mislead its customers.

102.   Publix is aware that inaccurate pricing and weights misleads and deceives customers.

103.   Publix is aware that charging a customer a price for an item that is more than the lowest advertised, quoted, posted, or marked price is an impermissible overcharge.

104.   To this point, in addition to the Federal Trade Commission ("FTC") Act's prohibition on "unfair or deceptive acts or practices in or affecting commerce" (Section 5 of the FTC Act, 15 USC §45), the FTC requires that any retailer who offers price comparisons "should make certain that the bargain offer is genuine and truthful. Doing so will serve their own interest as well as that of the general public." 16 C.F.R. § 233.5.

105. Publix has failed to implement policies, procedures and/or changes to its POS Systems to prevent the use of false and misleading pricing and weights, and the improper and damaging overcharging of customers as alleged herein.

106. Publix knowingly failed to implement policies and procedures to correct and/or prevent the systemic deceptive practices and overcharges alleged herein.

107. In addition to damages on behalf of herself and similarly situated consumers, Plaintiff seeks a declaratory judgment requiring Publix to update its POS system so that the weights for goods are no longer changed.

## CLASS ACTION ALLEGATIONS

108. Plaintiff brings this action on behalf of herself and all other similarly situated individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure and seeks certification of the following Class against Defendant for violations of FDUTPA and claims for unjust enrichment:

> All consumers who purchased one of the Products at a Publix store located in the United States, as detailed herein, within the statute of limitations period, including any tolling period (the "Class" and "Class Period"). Excluded from the Class are Defendant's current or former officers, directors, and employees; counsel for Plaintiff and Defendant; and the judicial officer to whom this lawsuit is assigned.

109.   Plaintiff reserves the right to amend the definition of the Class if discovery and further investigation reveals that the Class should be expanded or otherwise modified.

110.   Plaintiff reserves the right to establish sub-classes as appropriate.

111.   There is a well-defined community of interest among members of the Class, and the disposition of the claims of these members of the Class in a single action will provide substantial benefits to all parties and to the Court.

112.   The members of the Class are so numerous that joinder of all members of the Class is impracticable. At this time, Plaintiff believes that the Class includes thousands of members. Therefore, the Class is sufficiently numerous that joinder of all members of the Class in a single action is impracticable under Federal Rule of Civil Procedure Rule 23(a)(l), and the resolution of their claims through the procedure of a class action will be of benefit to the parties and the Court.

113.   Plaintiff's claims are typical of the claims of the members of the Class whom they seek to represent because Plaintiff and each member of the Class has been subjected to the same deceptive and improper practices by Defendant and have been damaged in the same manner.

114.   Plaintiff will fairly and adequately represent and protect the interests of the members of the Class as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiff has no interests that are adverse to those of

the members of the Class that she seeks to represent. Plaintiff is committed to the vigorous prosecution of this action and, to that end, Plaintiff has retained counsel that is competent and experienced in handling complex class action litigation on behalf of consumers.

115.   A class action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this Complaint under Federal Rule of Civil Procedure 23(b)(3) because:

    a. The expense and burden of individual litigation would not be economically feasible for members of the Class to seek to redress their claims other than through the procedure of a class action;

    b. If separate actions were brought by individual members of the Class, the resulting multiplicity of lawsuits would cause members to seek to redress their claims other than through the procedure of a class action; and

    c. Absent a class action, Defendant likely would retain the benefits of its wrongdoing, and there would be a failure of justice.

116.   Common questions of law and fact exist as to the members of the Class, as required by Federal Rule of Civil Procedure 23(a)(2), and predominate

over any questions that affect individual members of the Class within the meaning of Federal Rule of Civil Procedure 23(b)(3).

117.   The common questions of fact include, but are not limited to, the following:

  a.   Whether the practice by Defendant of selling falsely advertised products violate the Florida Deceptive and Unfair Trade Practices Act;

  b.   Whether Defendant engaged in unlawful, unfair, misleading, and/or deceptive business acts or practices;

  c.   Whether Defendant was unjustly enriched by deceptive business practices; and

  d.   Whether Plaintiff and members of the Class are entitled to an award of reasonable attorneys' fees, pre-judgment interest, and costs of this suit.

118.   Plaintiff is not aware of any difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

**COUNT I**
**Violation of Florida Deceptive And Unfair Trade**
**Practices Act, Fla. Stat. § 501.201 *et seq*.**

119.   Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in this complaint as if fully set forth herein.

120.   Plaintiff brings this claim on behalf of herself and the members of the proposed Class.

121.   Plaintiffs and the members of the Class are "consumers" within the meaning of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat.§ 501.203(7).

122.   Defendant is engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

123.   FDUTPA   prohibits   "[u]nfair   methods   of   competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce...." Fla. Stat. § 501.204(1).

124.   Defendant participated in unfair and deceptive trade practices that violated the FDUTPA as described herein.

125.   Defendant's Products are goods within the meaning of FDUTPA.

126.   Defendant's unfair and deceptive practices are likely to mislead—and have misled—reasonable consumers, such as Plaintiff and members of the Class, and therefore, violate § 500.04.

127.   Defendant has violated FDUTPA by engaging in the unfair and deceptive practices described above, which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

128. Specifically, Defendant marketed and advertised the Products in a deceptive, false and misleading manner by advertising false sale prices and providing false weights in Publix's POS system.

129. Defendant, directly or through its agents and employees, made false representations, concealments, and nondisclosures to Plaintiff and members of the Class.

130. Plaintiff and numerous other customers purchased the Products based on Defendant's false and misleading representations.

131. Plaintiff and numerous other customers purchased the Products after viewing and relying on the sale prices for the Products.

132. Plaintiff and the members of the Class have been aggrieved by Defendant's unfair and deceptive practices in violation of FDUTPA, in that they purchased the Products with the reasonable expectation that Publix would not change the weights for the Products and/or would not falsely advertise prices.

133. Reasonable consumers rely on Defendant to honestly market and label the Products in a way that does not deceive reasonable consumers.

134. Defendant has deceived reasonable consumers, like Plaintiff and the members of the Class, into believing that they obtained the sale price for the Products.

135. Plaintiff and the members of the Class suffered damages amounting to, at a minimum, the difference from what they paid and what they should have paid.

136. The damages suffered by Plaintiffs and the members of the Class were directly and proximately caused by the deceptive, misleading, and unfair practices of Defendant.

137. Pursuant to § 501.211(2) and § 501.2105, Plaintiffs and the members of the Class are entitled to damages, attorney's fees and costs.

## COUNT II
### Declaratory Judgment
### Pursuant to Florida's Deceptive and Unfair Trade Practices Act
### Florida Statute Section 501.201/211, *et seq.*

138. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in this complaint as if fully set forth herein.

139. Plaintiff brings this claim on behalf of herself and the members of the proposed Class.

140. FDUPTA, Section 501.211 provides that "Without regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part."

141.   As alleged supra, and also specifically in Count I, Plaintiff and the members of the Class have been aggrieved by Publix' violation of FDUPTA.

142.   Plaintiff, individually and on behalf of the members of the Class, seeks to obtain a declaratory judgment:

A.   Finding that Publix' conduct of falsely inflating product weight, is an act and practice that violates FDUPTA; and,

B.   Enjoining Publix, which has violated, is violating, and is likely to continue to violate FDUPTA with respect to falsely inflating product weight, from continuing to sell sold-by-weight products, until and only if, Publix has implemented procedures, controls and processes, including modifications to its databases and POS systems, to ensure that are accurate and not misleading with respect to the products' weight.

143.   Plaintiff and Class members are entitled to declaratory and injunctive relief, reasonable attorneys' fees and costs, and other relief as deemed appropriate or permitted pursuant to the relevant law.

## **COUNT III**
**Unjust Enrichment**

144.   Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in this complaint as if fully set forth herein.

145.   Plaintiff brings this claim on behalf of herself and the members of the proposed Class.

146.   Plaintiff and the Class members conferred benefits on Publix by purchasing the Products.

147.   Plaintiff and Class members conferred a monetary benefit on Publix by paying more for the Products than the advertised price for the Products.

148.   Publix has been unjustly enriched in retaining the revenues derived from Plaintiff's and the other members of the Class's purchases of the Products at prices that exceeded the advertised price. Retention of those monies under these circumstances is unjust and inequitable because Publix's advertisements were false and misleading to customers, which caused injuries to Plaintiff and the other members of the Classes.

149.   Publix knew that Plaintiff and Class Members conferred a benefit on Publix and accepted or retained that benefit.

150.   Through its false, misleading, unfair and deceptive pricing practices, Publix unjustly received and retained benefits at the expense of Plaintiff and Class members, specifically the difference in price between what was charged and what should have been charged

151.   By and through Publix's false, misleading, unfair and deceptive pricing practices, Publix has received, had use of, and accrued interest on these funds wrongfully obtained from Plaintiff and Class members.

152.   Publix should not be permitted to retain the money belonging to Plaintiff and Class members.

153.   Plaintiff and Class members have suffered pecuniary harm as a direct and proximate result of Publix's conduct.

154.   Plaintiff and Class members have no adequate remedy at law.

155.   Plaintiff and Class members are entitled to restitution of, disgorgement of, and/or the imposition of a construct trust upon all profits, benefits, and other compensation obtained by Publix, and for such other relief that this Court deems proper, as a result of their unfair, misleading, and inequitable conduct.

## RELIEF REQUESTED

156.   Accordingly, Plaintiff, on behalf of herself and the members of the Class, seek judgment as follows:

1.   Certifying the Class as requested herein, certifying Plaintiff as the representative of the Class, and appointing Plaintiff's counsel as counsel for the Class;

2.   Ordering that Defendant is financially responsible for notifying all members of the Class of the alleged misrepresentations and omissions set forth herein;

3.    Awarding Plaintiff and the members of the Class compensatory damages in an amount according to proof at trial;

4.    Ordering Defendant to correct the deceptive behavior;

5.    Awarding attorneys' fees, expenses, and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action; and

6.    Directing such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff and the Class demand a trial by jury as to all matters so triable.

Dated: February 19, 2025

/s/ *Anthony J. Russo*
Anthony J. Russo, Esq.
Florida Bar No. 43109
THE RUSSO FIRM
1001 Yamato Road, Suite 106
Boca Raton, FL 33431
T: 844-847-8300
E: anthony@therussofirm.com

James C. Kelly, Esq. (*pro hac vice*
to be filed)
THE RUSSO FIRM
244 5th Avenue, Suite K-278
New York, NY 10001
T: 212-920-5042
E: jkelly@therussofirm.com

*Counsel for plaintiffs*
*and the proposed class*