**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN OF FLORIDA**

| | |
|---|---|
| Wendy Koutouzis, on behalf of herself and all other similarly situated individuals,<br><br>Plaintiff,<br><br>vs.<br><br>Publix Super Markets, Inc.,<br><br>Defendant. | Case No.: 25-cv-20767-RAR<br><br>JURY TRIAL DEMANDED |

# FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Wendy Koutouzis ("Plaintiff"), by and through her undersigned counsel, upon personal knowledge as to herself and upon information and belief as to all other matters, allege as follows:

1. Plaintiff brings this action against defendant Publix Super Markets, Inc. (referred to herein as "Publix" or "Defendant"), on behalf of herself and all other similarly situated individuals who were overcharged by Publix for foods that were sold through various deceptive pricing schemes (hereinafter sometimes referred to as the "Products").

## SUMMARY OF FACTUAL ALLEGATIONS

2. This is a class action against Publix for implementing a deceptive scheme, through which Publix falsely claimed that foods sold by weight, such as meats, cheeses, and deli products, weighed materially more than the actual weight of the products.

3. Specifically, when a price reduction is advertised for one of the Products, instead of charging the reduced sale price multiplied by the weight of the product, Publix's point of sale checkout system ("POS") automatically increases the weight of the product, so that the consumer does not receive the sale price.

4. For example, during the week of January 18, 2025, Publix advertised that Publix Extra Lean Pork Tenderloin was on sale for $4.99 per pound, for a savings of $2.00 per pound, from its regular price of $6.99 per pound.

5. The advertisement was displayed in front of the pork tenderloin products and in Publix's circular as follows:


LOVE TO SAVE HERE.
4 99 LB
SAVE 2 00 LB
PUBLIX EXTRA LEAN PORK LOIN TENDERLOIN
Boneless
(2082) 0116 MEA #511 (96145)
QUANTITY LIMITS PER HOUSEHOLD APPLY


Colossal, Responsibly Sourced, Farmed, Previously Frozen
SAVE UP TO 4.00 LB
4 99 lb
Publix Extra Lean Pork Loin Tenderloin
Boneless
SAVE UP TO 2.00 LB
(Publix Lean Pork Loin Sirloin Roast, Boneless ... 4.99 lb)

6. Plaintiff purchased a package of Publix Extra Lean Pork Tenderloin that weighed 2.83 pounds per the label on said product.

7. However, Publix changed the weight of the Publix Extra Lean Pork Tenderloin that Plaintiff purchased to 3.96 pounds as follows:




8. Most customers do not realize that the weight of the product has changed because Publix's POS is programmed so that the total price of the

product matches the total price on the customer's receipt or the POS screen, so to avoid detection.

9. And, the customer's receipt does not list the weight of the product but only the alleged savings and the total price of the product.

10. If the customer is not able to see the checkout screen, which is the case with non-self-checkout lanes, the customer will never know that the weight was changed.

11. Publix also falsely claims on the customer's receipt that the customer obtained a $7.92 savings as a result of the sale price as follows:



12. As can be seen from the above example, although the POS screen states that the customer is receiving the $4.99 sale price for the pork tenderloin, the customer does not receive the sale price because the weight of the product was artificially inflated to an amount that allowed the POS and customer receipt to show a matching total price, so to avoid detection by the customer.

13. In this example, Publix should have charged Plaintiff 2.83 pounds multiplied by $4.99, for a total price of $14.12.

14. Instead, Publix charged Plaintiff $19.78, or $5.66 more, which amounts to a 40% overcharge.

15. As evidenced from above, Publix's actions are clearly deceptive and unfair to consumers.

16. Publix is wrongfully diverting customers' hard-earned money to itself by implementing a POS that is purposefully programmed to change the weights of products resulting in inflated sales revenues for the company.

17. Publix also implements other schemes to inflate Publix's revenues.

18. For example, Publix regularly keeps previous week advertisement specials/reduced-price sales signs up even though the sales expired.

19. In addition, Publix regularly places clearance sale signs in front of products that do not ring up at the clearance sale prices but ring up at the regular prices.

20. Publix also regularly provides incorrect pricing per unit data for baby formula.

21. Specifically, Publix regularly displays a lower price per ounce on the stickers on the shelves when the customer never receives the lower price per unit as advertised.

## THE PARTIES

22. Plaintiff Wendy Koutouzis is an individual consumer over the age of eighteen (18), who resides in the state of Florida.

23. Defendant, Publix Super Markets, Inc., a Florida corporation, is a supermarket chain headquartered in Lakeland, Florida. Founded in 1930, Publix is the largest employee-owned company in the United States.[1]

24. Publix is an employee-owned company and is the largest employee-owned company in the United States.

25. Publix operates throughout the Southeastern United States, with locations in Florida, Georgia, Alabama, South Carolina, Tennessee, North Carolina and Virginia.

26. Publix stands as one of the largest U.S. regional grocery chains. Locations are found as far north as Stafford, Virginia, as far south as Key West

---

[1] *See* https://corporate.publix.com/about-publix/company-overview/facts-figures.

Florida, while the westernmost location is in Mobile, Alabama. Today, the state of Florida still has the largest number of stores, with 872, representing about two-thirds of the outlets. As of February 2025, Publix employs about 255,000 people. *Id.*

27. In 2024, Publix was ranked No. 3 on Forbes' 2024 list of America's Largest Private Companies, and is the largest in Florida.[2]

28. The company's 2023 sales totaled US $57.1 billion, with net earnings of $4.3 billion.[3]

29. The number of Publix's store locations by state are as follows:

| State | Supermarkets as of February 2025 (inclusive of other categories) |
|---|---|
| Florida | 872 |
| Georgia | 217 |
| Alabama | 94 |
| South Carolina | 68 |
| Tennessee | 59 |
| North Carolina | 55 |
| Virginia | 23 |
| **Total** | **1389** |

[2] *See* https://www.forbes.com/lists/top-private-companies/.

[3] *See* Publix' Form 10-K Annual Report for the for the fiscal year ended December 30, 2023, at pp. 11-12, located at https://www.publixstockholder.com/financial-information-and-filings/sec-filings.

30. Publix, at all times material hereto, was registered and conducting business in Florida, maintained agents for the customary transaction of business in Florida, and conducted substantial and not isolated business activity within this state.

31. The advertising and POS for the Products at issue in this case were created, designed, and/or approved by Publix and/or its agents.

32. The advertised sale prices for the Products were designed to encourage consumers to purchase the Products and reasonably misled reasonable consumers, including Plaintiffs and the Class into purchasing the Products. Publix markets and distributes the Products, and is the company that created and/or authorized the unlawful, fraudulent, unfair, misleading and/or deceptive advertising and POS for the Products.

33. Plaintiffs allege that, at all times relevant herein, Publix and its subsidiaries, affiliates, and other related entities and suppliers, as well as their respective employees, were the agents, servants and employees of Publix and at all times relevant herein, each was acting within the purpose and scope of that agency and employment.

34. In addition, Plaintiff alleges that, in committing the wrongful acts alleged herein, Publix, in concert with its subsidiaries, affiliates, and/or other related entities and suppliers, and their respective employees, planned,

participated in and furthered a common scheme to induce members of the public to purchase the Products by means of untrue, misleading, deceptive, and/or fraudulent representations, and that Publix participated in the making of such representations in that it disseminated those misrepresentations and/or caused them to be disseminated.

35. Whenever reference in this Class Action Complaint is made to any act by Publix or its subsidiaries, affiliates, distributors, retailers and other related entities and suppliers, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of Publix committed, knew of, performed, authorized, ratified and/or directed that act or transaction on behalf of Publix while actively engaged in the scope of their duties.

## JURISDICTION AND VENUE

36. This Court has original diversity jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because the matter in controversy, exclusive of interests and costs, which includes the purchase price for all sales of the Products in the state of Florida during the past three years, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members, and some of the members of the class are citizens of states different from Publix.

37. Venue is proper pursuant to 28 U.S.C. § 1391. A substantial part of the events or omissions giving rise to Plaintiff's and the class members' claims occurred in this judicial district. Also, Defendant has used the laws within, and has done substantial business in, this judicial district in that it has promoted, marketed, distributed, and sold the products at issue in this judicial district.

38. There is personal jurisdiction over Defendant because Publix is incorporated in Florida and its executive offices are in Florida.

39. Further, because Publix's conduct of falsely inflating the weights of the Products, occurred in Florida, and in Publix stores in Florida, Publix is subject to personal jurisdiction in Florida.

40. Finally, because the deceptive scheme originated in Florida, Florida's Deceptive And Unfair Trade Practices Act applies to purchasers of the Products in Publix stores located in Georgia, Alabama, South Carolina, Tennessee, North Carolina and Virginia.

## **FACTUAL ALLEGATIONS**

41. Publix is engaging in a deceptive weighting scheme by programming its point of sale check out system to automatically adjust the weights of products at checkout so to inflate sales revenues and profits for the company.

42. At the time of purchase, the Defendant represented that the product weighed [X units of weight].

43. However, after the transaction was initiated, the Defendant unilaterally and without notice increased the weight of the product to [Y units of weight], thereby increasing the total price paid by the Plaintiff.

44. The Defendant's practice of increasing the weight of the product after advertising a specific price per unit of weight is deceptive, misleading, and designed to inflate the total price paid by consumers.

45. Because the weights are not disclosed on the customer receipt, if the customer does not notice the change in weight on the checkout screen, customers may never know that they were overcharged.

46. The Defendant's actions have caused the Plaintiff and other similarly situated consumers to suffer financial harm by paying more for the product than was originally advertised and agreed upon.

47. The Defendant's conduct is part of a pattern or practice of deceptive trade practices aimed at increasing profits at the expense of consumers.

48. For example, on January 10, 2025, Publix advertised that Kentucky Legend Turkey Breast went on sale for $7.99 per pound, a $2.00 per pound savings from its regular price of $9.99 per pound.

49. The advertised sale price was placed in front of the turkey breast as shown here:




50. Plaintiff purchased a package of Kentucky Legend Turkey Breast that weighed 1.75 pounds.

51. Plaintiff should have paid 1.75 pounds multiplied by $7.99, for a total of $13.98.

52. However, Plaintiff was charged $17.48 for the 1.75 pounds of Kentucky Legend Turkey Breast.

53. Publix claims that Plaintiff enjoyed a savings of $4.38 as a result of the sale for the Kentucky Legend Turkey Breast as follows:




54. However, Plaintiff did not obtain any savings from her purchase.

55. Instead, Publix falsely claimed on its POS that the Kentucky Legend Turkey Breast that she purchased weighed 2.19 pounds and charged her $17.48, as follows:




56. Plaintiff should have been charged 1.75 pounds multiplied by $7.99, for a total of $13.98, but was improperly charged 2.19 pounds multiplied by $7.99, for a total of $17.48, a $3.50 overcharge, 25% more than she should have been charged.

57. On January 18, 2025, Plaintiff purchased a package of Kentucky Legend Smoked Ham after it went on sale for $5.49 per pound, from its regular price of $7.39 per pound.

58. The advertisement was on Publix's website as follows:




59. Although the label on Plaintiff's Kentucky Legend Smoked Ham stated that it weighed 1.92 pounds, Publix's POS changed the weight to 2.58 pounds as follows:




60. Publix claimed on Plaintiff's receipt that she saved $4.90 as a result of the sale price for the Kentucky Legend Smoked Ham as follows:




61. However, Plaintiff did not obtain any savings as a result of the sale because she should have been charged $5.49 multiplied by 1.92 pounds, for a total of $10.54. Instead Plaintiff was charged $14.19, resulting in $3.65 more, a 35% overcharge.

62. In January of 2025, Publix announced a sale on Publix Extra Lean Pork Loin Tenderloin for $4.99 per pound, from its regular price of $6.99 per pound:




63. Plaintiff purchased a package of Publix Extra Lean Pork Loin Tenderloin that weighed 2.52 pounds, which Plaintiff confirmed the weight as follows:



64. Again, Publix's POS changed the weight of Plaintiff's Publix Extra Lean Pork Loin Tenderloin as follows:




65. Again, Publix claimed that she saved $7.06 on her receipt as a result of the sale price for Publix Extra Lean Pork Loin Tenderloin:




66. Plaintiff should have been charged $4.99 multiplied by 2.52 pounds, for a total of $12.57, however, she was improperly charged $17.61, which amounts to $5.04 more and a 40% overcharge.

67. On January 25, 2025, Publix had a sale for Spring Mountain Whole Chicken for $2.49 per pound, from its regular price of $2.99 per pound:







68. Plaintiff purchased a Spring Mountain Whole Chicken that weighed 4.15 pounds.

69. Publix charged Plaintiff $12.41 for the 4.15 pound Spring Mountain Whole Chicken and claimed that Plaintiff's chicken weighed 4.98 pounds, 20% more, and that Plaintiff obtained savings of $2.49:





Publix.
Seminole Heights
6001 N. Nebraska Ave
Tampa, FL 33604
Store Manager: Brandon Morsey
813-238-7720

| | | | |
|---|---|---|---|
| F/RICH MOZZ STICKS | | 8.29 | F |
| F/RICH MOZZ STICKS | | 8.29 | F |
| Promotion | | -8.29 | F |
| BIGELOW EARL GREY | | 3.79 | F |
| BIGELOW EARL GREY | | 3.79 | F |
| Promotion | | -3.79 | F |
| LAYS SALT/VINEGAR | | 4.99 | F |
| LAYS CLASSIC CHIPS | | 4.99 | F |
| Promotion | | -4.99 | F |
| BREY VANILLA | | 6.71 | F |
| BREY CHOCLT TRUFFL | | 6.71 | F |
| Promotion | | -6.71 | F |
| BROCCOLI WRAPPED | | 2.99 | F |
| You Saved | 1.00 | | |
| HORMEL BNL HAM HLF | | 30.20 | F |
| You Saved | 10.08 | | |
| S/MTN.WHOLE CHICK. | | 12.41 | F |
| You Saved | 2.49 | | |
| NEWMANS OWN PIZZA | | 8.79 | F |
| NEWMANS OWN PIZZA | | 8.79 | F |
| Promotion | | -8.79 | F |
| NWMN OWN STN MARG | | 9.89 | F |
| NWMN OWN STN MARG | | 9.89 | F |
| Promotion | | -9.89 | F |
| NWMN OWN STN MARG | | 9.89 | F |
| NWMN OWN STN MARG | | 9.89 | F |
| Promotion | | -9.89 | F |
| SUNSHINE STATE EGG | | 5.29 | F |
| SUNSHINE STATE EGG | | 5.29 | F |
| Order Total | | 108.53 | |
| Sales Tax | | 0.00 | |
| Grand Total | | 108.53 | |
| Credit | Payment | 108.53 | |
| Change | | 0.00 | |

Savings Summary
Special Price Savings 65.92
*************************************
* Your Savings at Publix *
* 65.92 *
*************************************

70. Plaintiff should have been charged $2.49 multiplied by 4.15 pounds, for a total of $10.33, however, she was improperly charged $12.41, which amounts to $2.08 more, a 20% overcharge.

71. On January 25, 2025, Publix also advertised that the Hormell Cure 81 Half Ham was on sale for $5.99 a pound, $2.00 off its regular price of $7.99:


Filter & sort
8 results for "hormel ham" sorted by best match
Meat
Hormel Cure 81 Boneless Half Ham
Save $2.00/lb
$5.99/lb $7.99/lb
Valid 1/23-1/29
Add to list
Aisle 1 - Cold Cuts
Hormel Natural Choice Fully cooked and 100% natural (minimally processed, no artificial
0.56
Buy 1 Get 1 Free
of equal or lesser price
$5.69
Valid 1/23-1/29
Add to list


LOVE TO SAVE HERE.
5.99 LB
SAVE 2.00 LB
HORMEL CURE 81 HALF HAM
Boneless
770) 0123 MEA #511 (96301)
QUANTITY LIMITS PER HOUSEHOLD APPLY

72. Plaintiff purchased a Hormell Cure 81 Half Ham that weighed 3.78 pounds:




73. Publix's POS changed the weight of Plaintiff's Hormel Ham to 5.04 pounds, instead of the actual 3.78 pound weight, and charged Plaintiff $30.20, when she should have been charged $22.64, a 33% overcharge.

74. Publix also falsely claimed that Plaintiff saved $10.08 on her Hormel Ham purchase as evidenced by the receipt cited above in paragraph 69.

75. On February 15, 2025, Plaintiff purchased another Hormel Ham that was on sale for $5.99 per pound and Publix's POS increased the weight of the ham from 3.77 pounds to 5.03 pounds as follows:



76. Publix charged Plaintiff $30.12, when she should have been charged $22.58, another 33% overcharge.

77. Publix also falsely claimed that Plaintiff saved $10.06 on her Hormel Ham purchase as evidenced by the following receipt:



Publix.
on Hillsborough Ave.
8701 West Hillsborough Avenue
Tampa, FL 33615
Store Manager: Billy De Mott
813-886-7693

| | | | |
|---|---|---|---|
| FIJI NAT ARTSN WTR | | 3.09 | F |
| FIJI NAT ARTSN WTR | | 3.09 | F |
| Promotion | | -3.09 | F |
| FIJI NAT ARTSN WTR | | 3.09 | F |
| FIJI NAT ARTSN WTR | | 3.09 | F |
| Promotion | | -3.09 | F |
| TAILOR MADE CAB | | 17.99 | T |
| TAILOR MADE CAB | | 17.99 | T |
| Promotion | | -17.99 | T |
| PUB JMB ICE CRM CO | | 2.69 | F |
| BIGELOW GREEN | | 3.79 | F |
| BIGELOW GREEN | | 3.79 | F |
| Promotion | | -3.79 | F |
| BIGELOW VAN CHAI | | 3.79 | F |
| BIGELOW VAN CHAI | | 3.79 | F |
| Promotion | | -3.79 | F |
| SNYDER SD NIBBLERS | | 4.79 | F |
| SNYDER SD NIBBLERS | | 4.79 | F |
| Promotion | | -4.79 | F |
| BIGELOW EARL GREY | | 3.79 | F |
| BIGELOW EARL GREY | | 3.79 | F |
| Promotion | | -3.79 | F |
| ITALIAN 5 GR BREAD | | 3.99 | F |
| You Saved | 1.00 | | |
| APPLES AMBROSIA | | | |
| 1.60 lb @ 1.49/ lb | | 2.38 | F |
| You Saved | 1.60 | | |
| PEARS BARTLETT | | | |
| 2.25 lb @ 1.99/ lb | | 4.48 | F |
| You Saved | 2.25 | | |
| APPLES GRANNY SMIT | | | |
| 4.13 lb @ 2.69/ lb | | 11.11 | F |
| HORMEL BNL HAM HLF | | 30.12 | F |
| You Saved | 10.06 | | |
| Order Total | | 95.10 | |
| Sales Tax | | 1.17 | |
| Grand Total | | 96.27 | |
| Credit | Payment | 96.27 | |
| Change | | 0.00 | |

Savings Summary
Special Price Savings 55.24
*************************************
* Your Savings at Publix *
* 55.24 *
*************************************

Receipt ID: 1324 1S0 740 216

PRESTO!
Trace #: 745128
Reference #: 1065689417
Acct #: XXXXXXXX[redacted]
Purchase American Express
Amount: $96.27
Auth #: 866179

CREDIT CARD PURCHASE
A000000025010801 AMERICAN EXPRESS
Entry Method: Chip Read
Mode: Issuer

Cashier Confirmed - Age Over 30

Your cashier was Self-Checkout Lane 1

01/27/2025 18:18 S1324 R174 0216 C0774

78. Publix also regularly artificially increases the weight for its weighted cheeses.

79. For example, in November of 2024, Publix advertised a sale for Publix Deli Cranberry Cheddar Cheese that was $8.99 per pound, down from $9.99 per pound.

80. On November 9, 2024, Plaintiff purchased the following package of Publix Deli Cranberry Cheddar Cheese that was labeled as weighing .60 pounds at the Publix located at 4900 W. Kennedy Blvd, Tampa Florida:



81. Publix charged Plaintiff $5.99 for the .60 pounds of Publix Deli Cranberry Cheddar Cheese and claimed that Plaintiff obtained savings of $.67 as follows:




82. However, Plaintiff did not obtain any savings for the Publix Deli Cranberry Cheddar Cheese, because Publix's POS changed the weight of her purchase to .67 pounds, an 11% increase.

83. Plaintiff should have been charged $5.39, but instead was charged $5.99, an 11% overcharge.

84. Plaintiff has also been overcharged as a result of Publix's deceptive practice of leaving old, reduced-price sale signs up when the sale expired.

85. For example, the following reduced-price sales sign for Granny Smith Apples was left up by Publix even though the sale expired:



86. On January 27, 2025, Plaintiff purchases the Granny Smith Apples listed above and was charged $2.69 a pound as evidenced by the following receipt listed above in paragraph 77. And, even after Plaintiff went to customer service and informed Publix of the incorrect sale sign, when she went back a few days later, the incorrect sales sign was still there. Plaintiff was not aware that the sale sign was expired at the time of her purchase.

87. On February 15, 2025, Plaintiff observed that the Granny Smith Apples were on sale again as per the following sign:



88. However, on February 15, 2025, Plaintiff purchases the Granny Smith Apples listed above and was charged $2.69 a pound as evidenced by the following receipt:



Publix.
Publix at Westshore
4900 W. Kennedy Blvd.
Tampa, FL 33609
Store Manager: Cody
813-281-0769

| | | | |
|---|---|---|---|
| SARATOGA SPARKLING | | 2.99 | T F |
| SARATOGA SPARKLING | | 2.99 | T F |
| Promotion | | -2.99 | T F |
| SARATOGA SPARKLING | | 2.99 | T F |
| STRAWBERRIES | | | |
| 1 @ 2 FOR | 5.00 | 2.50 | F |
| You Saved | 2.49 | | |
| STRAWBERRIES | | | |
| 1 @ 2 FOR | 5.00 | 2.50 | F |
| You Saved | 2.49 | | |
| SARATOGA SPARKLING | | 2.99 | T F |
| Promotion | | -2.99 | T F |
| SARATOGA SPARKLING | | 2.99 | T F |
| CHO 4PK COOKI CREM | | 5.89 | F |
| CHO 4PK COCO LOCO | | 5.89 | F |
| Promotion | | -5.89 | F |
| APPLES GRANNY SMIT | | | |
| 1.62 lb @ | 2.69/ lb | 4.36 | F |
| Order Total | | 24.22 | |
| Sales Tax | | 0.58 | |
| Grand Total | | 24.80 | |
| Credit | Payment | 24.80 | |
| Change | | 0.00 | |

Savings Summary
Special Price Savings 16.85
*************************************
* Your Savings at Publix *
* 16.85 *

89. Similar to the expired sales signs, Publix also regularly places products on clearance sales and fails to update the products with the clearance prices in the POS system.

90. For example, on April 6, 2025, Plaintiff purchased a bottle of Stem bug spray from the clearance rack. Said bug spray rang up at the regular price of $9.59 instead of the clearance price of $4.79:




91. On April 6, 2025, Plaintiff informed Publix of the overcharge and she obtained a refund for the bug spray.

92. However, Publix did not update its POS system with the clearance price.

93. On April 13, 2025, Plaintiff went back to the same Publix location and purchased another bottle of the Stem bug spray from clearance rack, still marked with the same $4.79 price, and again, it rang up at the regular price:




94. Plaintiff has also been overcharged as a result of Publix's false price per unit shelf labeling scheme.

95. For example, Publix stated that Enfamil ProSobee baby formula cost $1.59 per ounce on the sticker on the shelf as follows:




96. On January 3, 2025, Plaintiff purchases the 20.9-ounce container of Enfamil ProSobee baby formula and was charged $1.95 per ounce.

97. Although Plaintiff has obtained refunds for the Cranberry Cheddar Cheese, the Hormel Cure 81 Ham, the Granny Smith Apples, and the bug spray, she did not obtain refunds for the Publix Pork Loins, the Kentucky Legend Turkey, the Kentucky Legend Ham, the Springer Mountain Whole Chicken, or the Enfamil Prosobee baby formula.

98. Publix employees also make the refund process difficult and requires the consumer to repeatedly plead their case to obtain a refund as a result of the deceptive weights.

99. In multiple instances when Plaintiff complained about an overcharge, the Publix employee insisted that she was wrong.

100. Employees, including cashiers, customer service attendants, and department managers, do not only fail to alert customers, but insist purposely that the customer is wrong, and that the savings were already applied.

101. Many times, Plaintiff did not seek a refund even if she noticed the overcharge because she knew it would take a significant amount of time to plead her case and obtain a refund, and there was a good chance her request would be denied anyway, especially if the product was a high priced item.

102. Plaintiff is consistently overcharged through Publix's deceptive weighting scheme and seeks to end the practice.

103. Plaintiff continues to shop at Publix because it is the only full-service grocery store in her area and Publix has products that she cannot reasonably obtain elsewhere.

104. Publix is aware of the requirement, importance and need that its pricing and weights be accurate, not false, and not mislead its customers.

105. Publix is aware that inaccurate pricing and weights misleads and deceives customers.

106. Publix is aware that charging a customer a price for an item that is more than the lowest advertised, quoted, posted, or marked price is an impermissible overcharge.

107. To this point, in addition to the Federal Trade Commission ("FTC") Act's prohibition on "unfair or deceptive acts or practices in or affecting commerce" (Section 5 of the FTC Act, 15 USC §45), the FTC requires that any retailer who offers price comparisons "should make certain that the bargain offer is genuine and truthful. Doing so will serve their own interest as well as that of the general public." 16 C.F.R. § 233.5.

108. Publix has failed to implement policies, procedures and/or changes to its POS Systems to prevent the use of false and misleading pricing and weights, and the improper and damaging overcharging of customers as alleged herein.

109. Publix knowingly failed to implement policies and procedures to correct and/or prevent the systemic deceptive practices and overcharges alleged herein even after filling this class action lawsuit.

110. In addition to damages on behalf of herself and similarly situated consumers, Plaintiff seeks a declaratory judgment requiring Publix to update its POS system so that the weights for goods are no longer changed.

**<u>Factual Allegations Since the Filing of the Initial Complaint</u>**

111. Since the filing of the initial complaint in this action on February 19, 2025, several consumers have contacted Plaintiff's counsel verifying the schemes as described herein.

112. For example, a customer based in Tennessee, Sara Conte, has confirmed and provided evidence showing that her local Publix in Tennessee regularly overcharges her and changes the weights of packaged deli items.

113. Ms. Conte shops at the Publix located at 3532 Murfreesboro Pike, Antioch, Tennessee.

114. On August 22, 2023, Ms. Conte received an email from Publix with weekly sales and noticed that Boars Head Roast Beef was on sale for $12.99 per pound:


Here's the deal: Save on cleaning supplies

From: Publix Weekly Savings (coupons-noreply@exact.publix.com)
To: sconte[redacted]
Date: Tuesday, August 22, 2023 at 11:09 PM CDT

Club P

**Freesia, get your savings on!**

Enjoy these deals through 08/29/23.

**Deals picked for you.**

2.00 Off
**Always Discreet Pads**
Or Underwear, 15 to 66-ct. pkg.; or TENA Pads, Underwear, or Guards for Men, 14...

1.99 lb
**Red or White Seedless Grapes**
Only the Best Flavored Varieties Selected

Buy 1 Get 1 FREE*
**Thomas' English Muffins**

12.99 lb
**Boar's Head® London Broil Roast Beef†**
Sliced Fresh in the Publix Deli

115. Ms. Conte visited her local Publix on August, 23,2025, and ordered one half of a pound of Boars Head Roast Beef at the deli, and the label printed out by the deli employee stated as follows:




116. On her receipt, Publix claimed that she saved $1.26 on her deli Boars Head Roast Beef purchase:

Your Publix receipt.

From: Publix Super Markets (no-reply@exact.publix.com)
To: sjconte[redacted]
Date: Wednesday, August 23, 2023 at 03:18 PM CDT

Publix.

12358NN735887

Mt. View Marketplace
3532 Murfreesboro Pike
Antioch, TN 37013
Store Manager: Steve Brown
615-501-8250

| | | |
|---|---|---|
| POTATOES SWEET | | |
| 1.58 lb @ 1.07/ lb | | 1.69 t F |
| BROCCOLI FLORETS | | 5.99 t F |
| You Saved | 1.00 | |
| CAULIFLOWER | | 2.99 t F |
| CUCUMBERS | | |
| 2 @ 0.86 | | 1.72 t F |
| LETTUCE ICEBERG | | 2.14 t F |
| BEANS GREEN TRIM | | 3.19 t F |
| Promotion | | -1.60 t F |
| BEANS GREEN TRIM | | 3.19 t F |
| Promotion | | -1.59 t F |
| BEANS GREEN TRIM | | 3.19 t F |
| Promotion | | -1.60 t F |
| BEANS GREEN TRIM | | 3.19 t F |
| Promotion | | -1.59 t F |
| BH LND TOP RST BF | | 8.24 t F |
| You Saved | 1.26 | |
| BH PTCRFT SMK TRKY | | 7.97 t F |

117. However, that is false because Ms. Conte did not receive any savings for her Boars Head Roast Beef deli purchase. Ms. Conte should have been charged .55 pounds multiplied by $12.99 for a total price of $7.14. Instead, Ms. Conte was charged the regular price of $14.99 per pound multiplied by .55, for a total price of $8.24, a 15.4% overcharge.

118. Accordingly, Publix falsely claimed that Ms. Conte received a sale when she did not receive any sale.

119. Ms. Conte claims that Publix regularly overcharges her, forcing her, like Plaintiff, to document and analyze her purchases.

120. Ms. Conte also claims that Publix leaves up old sales signs and when she notifies Publix of the expired sales signs, Publix does not take them down.

121. For example, on Wednesday, April 2, 2025, while shopping at Publix, Ms. Conte saw a sale sign for Bounty paper towels, claiming that the product was on sale for $16.99. The product did not ring up at the sale price and she informed Publix. On Sunday, April 6, 2025, Ms. Conte went back to the same location and the same $16.99 sales sign was still up.

122. On December 19, 2024, a Publix customer that shops at the Publix located at 4495 Roosevelt Blvd Ste 103, Jacksonville, FL 32210, noticed that the Butterball Frozen Young Turkey was on sale as follows:




123. Said customer discovered that the POS system changed the weight and photographed the evidence from the POS screen as follows:




124. In addition, said customer, after this lawsuit was filed, purchased a bottle of wine and the wine had a sales sign in front of it, but it did not ring up on sale:






125. Moreover, numerous customers have confirmed that Publix's so called "Publix Promise" or refunds are difficult to obtain.

126. Defendant, throughout its store and online offers the "Publix Promise", which states: "Our Publix Promise guarantees that if during checkout, the scanned price of an item (excluding alcohol and tobacco products) exceeds the shelf price or advertised price, we will give the customer one of that item free. We will charge the lower price for the remaining items." See https://www.publix.com/pages/policies/publix-promise.

127. An example of one of the signs that is displayed throughout Publix stores is as follows:




128. However, as explained herein, and verified by Plaintiff and multiple consumers, Publix does not adhere to its Publix Promise.

129. Publix does not disclose that a customer has to prove that the item scanned higher than the advertised price or shelf price and/or repeatedly plead her case.

130. Further, Publix does not disclose that there is a price limit on the Publix Promise.

131. For example, a Publix customer named Deborah Ross, informed Plaintiff's counsel of the difficulties that she faced when she learned that Publix changed the weight of a turkey that she purchased.

132. In November of 2024, Ms. Ross purchased a Publix Whole Smoked Turkey that was on sale for $2.99 a pound, down from the regular price of $3.69 per pound, at the Publix located at 9201 Oakhurst Road, Seminole, Fl 33776. The label on the turkey stated that it weighed 9.07 pounds. Ms. Ross was charged $33.47 for the turkey, when she should have been charged $27.11, a 23% overcharge.

133. At home, Ms. Ross noticed that she did not receive the sales price, so she went back to the store to obtain a refund.

134. Publix adjusted her receipt to account for the $2.99 sales price but claimed that the turkey weighed 11 pounds, two more pounds than what was stated on the label, and charged her $32.89 instead of a full refund.

135. Ms. Ross went home and weighed the turkey herself and discovered that the turkey weighed 9 pounds, when Publix claimed that it weighed 11 pounds and the label stated 9.07 pounds. Ms. Ross had to go back to the store a third time to argue for a refund pursuant to the Publix Promise for the false weight claim.

136. It is clear from the evidence that Publix is not complying with its Publix Promise or refund policies.

137. In its motion to dismiss, Publix argues that because Plaintiff knew of the overcharges before she continued to check out and pay for her groceries

that her claims were barred by the Voluntary Payment Doctrine and that she has no standing because she could have asked for a refund.

138. However, Plaintiff only posted some of the transactions for which she had documented proof of in the initial Class Action Complaint.

139. Plaintiff began documenting most of her shopping trips at Publix since learning that Publix was consistently overcharging her and making it difficult for her to obtain refunds.

140. Publix is not alone in overcharging customers. Publix's conduct mirrors allegations in lawsuits against Walmart, which settled claims of weight inflation for millions, and reports of store-wide pricing errors at Kroger, reflecting an industry-wide pattern of deceptive pricing. Indeed, a news reporter from Good Morning America recently warned customers to take photographs of sales tags while grocery shopping now.[4]

141. Plaintiff has had several experiences where she was overcharged and did not document the purchase, including being overcharged in the non-self-checkout lane.

142. Specifically, in April of 2024. Plaintiff purchased a block of Boars Head Parmigiano Reggiano cheese that was on sale. It was approximately $.50 off per pound and she did not obtain the sale price. Plaintiff sought a refund

4 *See* Good Morning America, *Grocery stores overcharging: Consumer Reports*, YouTube (2025, May 15), https://youtu.be/EbHCv3Ukm6E?t=81.

for the cheese, but the cashier insisted she obtained the sale price, and Plaintiff accepted it and did not obtain a refund.

143. Later in April 2024, Plaintiff did not receive the sales price for a beef tenderloin that she purchased. Said beef tenderloin was expensive, approximately $60, and Plaintiff purchased it because it was on sale for $19.99 per pound, approximately $5 dollars less than its regular sales price. Plaintiff informed the cashier that she did not receive the sale price. The cashier insisted that Plaintiff received the sale price. The cashier called over a manager, and the manager stated the meat was too expensive to provide the Publix Promise. Instead of continuing to argue, Plaintiff conceded and did not obtain a refund.

144. Shortly thereafter, Plaintiff purchased a chicken. She recalled that the tag stated it was around $12 with the non-sale price per pound on the tag. The receipt claimed that she "saved" approximately $5. Plaintiff explained to the cashier that she didn't see the savings, and that she was overcharged. However, the cashier insisted that she received her savings and again, Plaintiff conceded and did not obtain a refund.

145. Around May of 2024, Plaintiff began to document her purchases and take photos of the sales price signs as evidence for when she was overcharged.

146. On May 25, 2024, Plaintiff purchased three different hams.

147. Each of the hams had sale signs in front of them and Plaintiff took a picture of each of the hams that she purchased with the sales signs as follows:









148. Publix claimed that she received savings for each of the hams on her receipt as follows:




149. However, Plaintiff did not receive any savings.

150. Plaintiff was determined to obtain refunds for the hams because not one of the hams rang up on sale. After arguing and proving her case, Plaintiff successfully obtained a refund for each of the hams.

151. Plaintiff had no idea how Publix was overcharging her and why she was not obtaining the sales price even though her receipts claimed that she obtained savings.

152. Even when Plaintiff started taking photographs of the self-checkout screen, it was not apparent that the weights were changed.

153. Plaintiff faced a self-checkout screen showing the weight of the item alongside a sale price per pound, with a total matching the pre-sale label,

creating confusion. *See Kukorinis v. Walmart*, No. 19-CV-20592-MARTINEZ, 2020 WL 13388297, *3 (S.D. Fla. June 1, 2020) ("Contrary to Walmart's assertion, the fact that Plaintiff continued to purchase Weighted Goods does not negate his injury but may in fact highlight the pervasive effect of the alleged misconduct."); *Kahn v. Walmart Inc.*, 107 F.4th 585, 599 (7th Cir. 2024)(reversing the district court and holding that that comparing receipts to posted prices "would require unreasonable efforts by consumers to protect themselves from deception.").

154. Under cognitive overload from processing multiple items, facing time constraints and social pressure to complete the transaction quickly, and perceiving the display as a potential glitch or legitimate sale structure, Plaintiff reasonably proceeded with payment, believing the sale was applied or intending to address issues later via Publix's refund policies or consumer protection laws.

155. These factors—compounded by habitual checkout behavior and reliance on post-purchase remedies—demonstrate that Plaintiff's decision to click "pay" was not a deliberate endorsement of the inflated price but a practical response to Publix's deceptive and ambiguous presentation.

156. Moreover, Publix's dominance in Florida, with 872 stores, leaves consumers with few viable alternatives.

157. Competitors like Walmart and Aldi are not viable alternatives due to limited variety or generic and no brand names, long line delays, and/or unsafe locations.

158. This lack of comparable alternatives forces Plaintiff and many consumers to shop at Publix, despite its deceptive practices and high prices, as it is often the only full-service grocer available.[5]

159. The necessity of relying on Publix negates any claim that Plaintiff's purchases were voluntary, as she had no meaningful choice but to navigate Publix's deceptive pricing environment, which consistently results in overcharges and the burden of disputing errors, many times unsuccessfully.

160. Further, Publix's Publix Promise, which offers a free item if an item "rings up" at the wrong price or weight, is a superficial remedy that fails to address the systemic nature of its deceptive practices.

161. The Publix Promise is triggered at scanning, locking in errors before payment, and burdens consumers with detecting and disputing discrepancies.

162. Indeed, the Publix Promise does not state that it is dependent upon the customer not clicking pay at checkout, but states that the customer is

[5] *See* JC Ruiz, *Publix Prices Are Out of Control,* Medium (Sep 8, 2023), https://medium.com/@jcruizphoto/publix-prices-are-out-of-control-56500782984d.

entitled to a free item if "during checkout, the scanned price of an item (excluding alcohol and tobacco products) exceeds the shelf price or advertised price...."

163. Plaintiff alleges the refund process is arduous, requiring her to "repeatedly plead her case" to resistant employees, and incomplete, as she did not receive refunds in many instances.

164. A writer for The Palm Beach Post has also verified Plaintiff's claims, stating that:

> Showing the flyer with the Snapple picture and sale price the Customer Service employee scanned my item on her register and the sale price appeared. Asking why her register had the correct sale price and the cashier's register was wrong, her response that was, as a favor, she would allow me to purchase the item at the sale price. I reported this bad experience to Publix corporate. They said they would answer me in 24 to 48 hours. That was six months ago.
>
> *See* Art Fischer, *Publix overcharged me. They probably did the same to you,* The Palm Beach Post (March 10, 2025), https://www.yahoo.com/news/publix-overcharged-probably-did-same-140704212.html.

165. In fact, every time Plaintiff went to customer service, she had to spend time arguing and explaining the discrepancy. While some of the employees attempted to persuade her that she obtained her savings, and not always in a polite way, others tried to embarrass or belittle her, stating "she wants it for free" or "you did get the discount, see, you saved" pointing to the falsely stated "You Saved" on the receipt.

166. This ongoing burden, coupled with Publix's failure to prevent recurring overcharges, and its failure to adhere to its Public Promise policy constitutes a cognizable injury under FDUTPA.

**<u>Changes Made to Publix's POS System Post Lawsuit</u>**

167. Plaintiff has recently discovered that Publix modified its POS system to no longer display the alleged weight of "sold-by-weight" products at checkout, a deliberate change that further conceals weight inflation from consumers.

168. On May 22, 2025, Plaintiff purchased a Publix Turkey Breast. The Turkey Breast was on sale for $4.19 per pound:



169. The checkout screen did not display the weight or price per pound and overcharged Plaintiff:




170. Despite this modification, Publix's receipts continue to show false "You Saved" amounts, misleadingly suggesting that advertised sale prices were applied when, in fact, they were not, resulting in overcharges:




171. The absence of weight information on the checkout screen prevents consumers from detecting such discrepancies in real-time, exacerbating the deception inherent in Publix's pricing scheme.

172. This change to the POS system, implemented without correcting the underlying weight inflation, indicates Publix's intent to perpetuate its deceptive practices while making it harder for consumers to challenge overcharges.

173. Despite Publix's ability to alter its POS system to hide weight displays, it has not implemented a simple change to stop the inflation of

product weights in the first instance, underscoring the deliberate nature of its misconduct and its desire to continue to inflate revenues. This failure to address the root cause of overcharges, while actively concealing weight information, aggravates the harm to consumers who rely on transparent pricing.

## CLASS ACTION ALLEGATIONS

174. Plaintiff brings this action on behalf of herself and all other similarly situated individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure and seeks certification of the following Weighted Goods Class against Defendant for violations of FDUTPA and claims for unjust enrichment and breach of contract:

> All consumers who purchased a product in which the Publix POS system changed the weight of product, at a Publix store located in the United States, as detailed herein, within the statute of limitations period, including any tolling period (the "Weighted Goods Class"). Excluded from the Class are Defendant's current or former officers, directors, and employees; counsel for Plaintiff and Defendant; and the judicial officer to whom this lawsuit is assigned.

175. Plaintiff brings this action on behalf of herself and all other similarly situated individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure and seeks certification of the following Expired Sales Sign Class against Defendant for violations of FDUTPA and claims for unjust enrichment and breach of contract:

> All consumers who purchased a product with an expired sales sign, at a Publix store located in the United States, as detailed herein, within the statute of limitations period, including any tolling period (the "Expired Sales Sign Class"). Excluded from the Class are Defendant's current or former officers, directors, and employees; counsel for Plaintiff and Defendant; and the judicial officer to whom this lawsuit is assigned.

176. Plaintiff brings this action on behalf of herself and all other similarly situated individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure and seeks certification of the following Clearance Sales Sign Class against Defendant for violations of FDUTPA and claims for unjust enrichment and breach of contract:

> All consumers who purchased a product with a false clearance sale sign, at a Publix store located in the United States, as detailed herein, within the statute of limitations period, including any tolling period (the "Clearance Sales Sign Class"). Excluded from the Class are Defendant's current or former officers, directors, and employees; counsel for Plaintiff and Defendant; and the judicial officer to whom this lawsuit is assigned.

177. Plaintiff brings this action on behalf of herself and all other similarly situated individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure and seeks certification of the following Baby Formula Class against Defendant for violations of FDUTPA and claims for unjust enrichment and breach of contract:

> All consumers who purchased baby formula with a higher price per unit than the price per unit listed on the shelf, at a Publix store located in the United States, as detailed herein, within the statute of limitations period, including any tolling period (the "Baby Formula Class"). Excluded from the Class are Defendant's current or former officers, directors, and employees; counsel for Plaintiff and Defendant; and the judicial officer to whom this lawsuit is assigned.

178. Plaintiff reserves the right to amend the definition of each class if discovery and further investigation reveals that either class should be expanded or otherwise modified.

179. Plaintiff reserves the right to establish sub-classes as appropriate.

180. There is a well-defined community of interest among members of each class, and the disposition of the claims of these members of each class in a single action will provide substantial benefits to all parties and to the Court.

181. The members of each class are so numerous that joinder of all members of each class is impracticable. At this time, Plaintiff believes that each class includes thousands of members. Therefore, each class is sufficiently numerous that joinder of all members of each class in a single action is impracticable under Federal Rule of Civil Procedure Rule 23(a)(l), and the resolution of their claims through the procedure of a class action will be of benefit to the parties and the Court.

182. Plaintiff's claims are typical of the claims of the members of each of the classes that she seeks to represent because Plaintiff and each member

of every class has been subjected to the same deceptive and improper practices by Defendant and have been damaged in the same manner.

183. Plaintiff will fairly and adequately represent and protect the interests of the members of each class as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiff has no interests that are adverse to those of the members of each class that she seeks to represent. Plaintiff is committed to the vigorous prosecution of this action and, to that end, Plaintiff has retained counsel that is competent and experienced in handling complex class action litigation on behalf of consumers.

184. A class action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this Complaint under Federal Rule of Civil Procedure 23(b)(3) because:

a. The expense and burden of individual litigation would not be economically feasible for members of each class to seek to redress their claims other than through the procedure of a class action;

b. If separate actions were brought by individual members of each class, the resulting multiplicity of lawsuits would cause members to seek to redress their claims other than through the procedure of a class action; and

c. Absent a class action, Defendant likely would retain the benefits of its wrongdoing, and there would be a failure of justice.

185. Common questions of law and fact exist as to the members of each class, as required by Federal Rule of Civil Procedure 23(a)(2), and predominate over any questions that affect individual members of each class within the meaning of Federal Rule of Civil Procedure 23(b)(3).

186. The common questions of fact include, but are not limited to, the following:

a. Whether the practice by Defendant of selling falsely advertised products violates the Florida Deceptive and Unfair Trade Practices Act;

b. Whether the practice by Defendant of changing the weights of goods in its POS system violates the Florida Deceptive and Unfair Trade Practices Act;

c. Whether Defendant engaged in unlawful, unfair, misleading, and/or deceptive business acts or practices;

d. Whether Defendant was unjustly enriched by deceptive business practices;

e. Whether Defendant breached its contract with Plaintiff and class members; and

f. Whether Plaintiff and the members of each class are entitled to an award of reasonable attorneys' fees, pre-judgment interest, and costs of this suit.

187. Plaintiff is not aware of any difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

## COUNT I
## Violation of Florida Deceptive And Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.*

188. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in this complaint as if fully set forth herein.

189. Plaintiff brings this claim on behalf of herself and the members of each proposed class.

190. Plaintiff and the members of each class are "consumers" within the meaning of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat.§ 501.203(7).

191. Defendant is engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

192. FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce...." Fla. Stat. § 501.204(1).

193. Defendant participated in unfair and deceptive trade practices that violated the FDUTPA as described herein.

194. Defendant's Products are goods within the meaning of FDUTPA.

195. Defendant's unfair and deceptive practices are likely to mislead—and have misled—reasonable consumers, such as Plaintiff and the members of each class, and therefore, violate § 500.04.

196. Defendant has violated FDUTPA by engaging in the unfair and deceptive practices described above, which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

197. Specifically, Defendant marketed and advertised the Products in a deceptive, false and misleading manner by advertising false sales and/or clearance prices, providing false weights in Publix's POS system, and displaying false price per unit information for baby formula.

198. Defendant, directly or through its agents and employees, made false representations, concealments, and nondisclosures to Plaintiff and the members of each class.

199. Plaintiff and numerous other customers purchased the Products based on Defendant's false and misleading representations.

200. Plaintiff and numerous other customers purchased the Products after viewing and relying on the sale prices for the Products.

201. Plaintiff and the members of each class have been aggrieved by Defendant's unfair and deceptive practices in violation of FDUTPA, in that they purchased the Products with the reasonable expectation that Publix would not change the weights for the Products, and/or would not falsely advertise sales and/or clearance prices, and/or would not display false unit per ounce information for baby formula.

202. Reasonable consumers rely on Defendant to honestly market and label the Products in a way that does not deceive reasonable consumers.

203. Defendant has deceived reasonable consumers, like Plaintiff and the members of each class, into believing that they obtained the sale prices for the Products.

204. Plaintiff and the members of each class suffered damages amounting to, at a minimum, the difference from what they paid and what they should have paid.

205. The damages suffered by Plaintiff and the members of each class were directly and proximately caused by the deceptive, misleading, and unfair practices of Defendant.

206. Pursuant to § 501.211(2) and § 501.2105, Plaintiff and the members of each class are entitled to damages, attorney's fees and costs.

## COUNT II
## Declaratory Judgment
## Pursuant to Florida's Deceptive and Unfair Trade Practices Act
## Florida Statute Section 501.201/211, *et seq*.

207. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in this complaint as if fully set forth herein.

208. Plaintiff brings this claim on behalf of herself and the members of each class.

209. FDUPTA, Section 501.211 provides that "Without regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part."

210. As alleged supra, and also specifically in Count I, Plaintiff and the members of each class have been aggrieved by Publix's violation of FDUPTA.

211. Plaintiff, individually and on behalf of the members of each class, seeks to obtain a declaratory judgment:

A. Finding that Publix's conduct of falsely inflating product weight, is an act and practice that violates FDUPTA; and,

B. Enjoining Publix, which has violated, is violating, and is likely to continue to violate FDUPTA with respect to falsely inflating product weight, from continuing to sell sold-by-weight products, until and only

if, Publix has implemented procedures, controls and processes, including modifications to its databases and POS systems, to ensure that prices are accurate and product weights are not changed.

212. Plaintiff and class members are entitled to declaratory and injunctive relief, reasonable attorneys' fees and costs, and other relief as deemed appropriate or permitted pursuant to the relevant law.

## COUNT III
## Unjust Enrichment

213. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in this complaint as if fully set forth herein.

214. Plaintiff brings this claim on behalf of herself and the members of each class.

215. Plaintiff and the class members conferred benefits on Publix by purchasing the Products.

216. Plaintiff and class members conferred a monetary benefit on Publix by paying more for the Products than the advertised price or what they should have paid.

217. Publix has been unjustly enriched in retaining the revenues derived from Plaintiff and the members of each class. Retention of those monies under these circumstances is unjust and inequitable because Publix's

advertisements were false and misleading to customers, which caused injuries to Plaintiff and the members of each class.

218. Publix knew that Plaintiff and the members of each class conferred a benefit on Publix and accepted or retained that benefit.

219. Through its false, misleading, unfair and deceptive pricing practices, Publix unjustly received and retained benefits at the expense of Plaintiff and class members, specifically the difference in price between what was charged and what should have been charged

220. By and through Publix's false, misleading, unfair and deceptive pricing practices, Publix has received, had use of, and accrued interest on these funds wrongfully obtained from Plaintiff and class members.

221. Publix should not be permitted to retain the money belonging to Plaintiff and class members.

222. Plaintiff and class members have suffered pecuniary harm as a direct and proximate result of Publix's conduct.

223. Plaintiff and class members have no adequate remedy at law.

224. Plaintiff and class members are entitled to restitution of, disgorgement of, and/or the imposition of a construct trust upon all profits, benefits, and other compensation obtained by Publix, and for such other relief that this Court deems proper, as a result of their unfair, misleading, and inequitable conduct.

## COUNT IV
## Breach of Contract

225. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in this complaint as if fully set forth herein.

226. Plaintiff brings this claim on behalf of herself and the members of each class.

227. Defendant, throughout its store and online offers the "Publix Promise", which states: "Our Publix Promise guarantees that if during checkout, the scanned price of an item (excluding alcohol and tobacco products) exceeds the shelf price or advertised price, we will give the customer one of that item free. We will charge the lower price for the remaining items." *See* *https://www.publix.com/pages/policies/publix-promise*.

228. Plaintiffs and numerous other customers reasonably relied on the Publix Promise when shopping at Publix.

229. Plaintiff and similarly situated customers purchased items that scanned at higher prices than the shelf price and/or advertised price and were denied free items and/or refunds.

230. Defendant breached its contract with Plaintiff and similarly situated customers who were overcharged.

231. Defendant failed to disclose that the Publix Promise requires customers to prove and plead their case.

232. Defendant failed to disclose that there is a price limit for the Publix Promise.

233. Defendant failed to disclose that its POS system may change the weights of goods.

234. As a result of Defendant's breach of contract, Plaintiff and similar purchasers suffered damages amounting to the difference between the price that was paid and the price that should have been paid.

## RELIEF REQUESTED

235. Accordingly, Plaintiff, on behalf of herself and the members of each class, seek judgment as follows:

1. Certifying each class as requested herein, certifying Plaintiff as the representative of each class, and appointing Plaintiff's counsel as counsel for each class;

2. Ordering that Defendant is financially responsible for notifying all members of each class of the alleged misrepresentations and omissions set forth herein;

3. Awarding Plaintiff and the members of each class compensatory damages in an amount according to proof at trial;

4. Ordering Defendant to correct the deceptive behavior;

5. Awarding attorneys' fees, expenses, and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action; and

6. Directing such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff and the members of each class demand a trial by jury as to all matters so triable.

Dated: June 2, 2025

/s/ *Anthony J. Russo*
Anthony J. Russo, Esq.
Florida Bar No. 43109
THE RUSSO FIRM
1001 Yamato Road, Suite 106
Boca Raton, FL 33431
T: 844-847-8300
E: anthony@therussofirm.com

James C. Kelly, Esq. (*pro hac vice*)
THE RUSSO FIRM
244 5th Avenue, Suite K-278
New York, NY 10001
T: 212-920-5042
E: jkelly@therussofirm.com

*Counsel for plaintiff*