## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| WENDY KOUTOUZIS, and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO.: 1:25-cv-20767-RAR |
| PUBLIX SUPER MARKETS, INC., | ) ) | |
| Defendant. | ) ) ) | |

## DEFENDANT PUBLIX SUPER MARKETS, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

Dated: June 23, 2025

Respectfully submitted,

*/s/ Jennifer A. McLoone*
Daniel B. Rogers (Florida Bar No. 195634)
E-Mail: drogers@shb.com
Jennifer A. McLoone (Florida Bar No. 029234)
E-mail: jmcloone@shb.com
SHOOK, HARDY & BACON L.L.P.
Citigroup Center, Suite 3200
201 South Biscayne Blvd.
Miami, Florida 33131
T: (305) 358-5171

***Counsel for Defendant Publix Super Markets, Inc.***

4912-9347-9758

Defendant Publix Super Markets, Inc. ("Publix") moves, pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), to dismiss Plaintiff's First Amended Class Action Complaint ("FAC") [ECF No. 17]. Plaintiff initiated this lawsuit alleging that she was "overcharged by Publix for foods that were sold through various deceptive pricing schemes." Compl. ¶ 1, ECF No. 1. Publix moved to dismiss for a variety of reasons. [ECF No. 7] Most glaringly, Plaintiff's complaint made clear she had manufactured her standing, and this lawsuit, by knowingly purchasing products at prices she believed were incorrect and documenting that in real time with photographs taken at the point-of-sale. Moreover, Plaintiff's complaint conceded that she was aware of the availability of refunds from Publix, obtained refunds in some instances, and chose not to seek refunds in others. As a result, Publix argued that Plaintiff lacked standing, lacked actual damages to support her Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim, had not pled deceptive conduct on the part of Publix, had not pled causation, was not at risk of future harm to bring an injunctive relief claim, that Publix was not unjustly enriched, and that Plaintiff's claims were barred by the voluntary payment doctrine.

Rather than respond to Publix's Motion to Dismiss, Plaintiff filed a Notice of Intent to File an Amended Complaint. [ECF No. 12], and subsequently filed her FAC [ECF No. 17]. Plaintiff's FAC contains all the same manufactured allegations as Plaintiff's original complaint, <u>even though Plaintiff admits she was refunded by Publix for some of those very purchases</u>, as well as new allegations designed to plead around Publix's Motion to Dismiss arguments. Plaintiff's FAC also pleads an additional purportedly deceptive pricing theory Plaintiff claims to have discovered since the filing of the lawsuit (she has continued to shop at Publix). Plaintiff's FAC fares no better than her original complaint and should be dismissed.

## INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff's original complaint purported to identify three "deceptive pricing schemes" she allegedly encountered at Publix, each of which are reiterated in her FAC.

_First_, Plaintiff alleges Publix's point-of-sale system sometimes inflates the weight of weighted goods (_i.e._, goods whose total price depends on their weight) when such goods are sold at a discounted unit price, resulting in the consumer still being charged the non-sale total price stated on the product's label (instead of being charged a total price equal to the discounted unit price multiplied by the product's actual weight). FAC ¶¶ 3, 41-47. Plaintiff alleges this pricing discrepancy occurred intermittently at different Publix locations while purchasing Extra Lean Pork Tenderloin, Kentucky Legend Turkey Breast, Kentucky Legend Smoked Ham, Springer Mountain Farms whole chicken, Hormel Ham, and Cranberry Cheddar Cheese. _Id._ ¶¶ 4-14, 48-83. Plaintiff's FAC now admits that she was refunded by Publix for at least the Hormel Ham and Cranberry Cheddar Cheese purchases.  _Id._ ¶ 97.

_Second_, Plaintiff alleges Publix sometimes displays sale signs after the sale has ended, but does not honor the displayed sale price at checkout. _Id._ ¶¶ 84-86. Plaintiff claims this occurred on January 27, 2025, when she was charged the non-sale price for Granny Smith Apples that still had a sale price displayed. _Id_. Plaintiff's original Complaint and FAC present in detail her regular practice of scrutinizing every line item of every purchase, and documenting any potential discrepancies photographically in real time as of the time of her purchase. Nevertheless, she now (for the first time) alleges that she did not know that the sale had ended at the time of her purchase of these apples,[1] while also admitting she "went to customer service and informed Publix of the incorrect sale sign", _id._ ¶ 86, and that she was refunded by Publix for this purchase.  _Id._ ¶ 97.

---

[1] Plaintiff's original complaint did not contain the final sentence of Paragraph 86 wherein she alleges that she was not aware that the sale sign was expired at the time of her purchase. _See_ ECF No. 1 ¶ 89. Plaintiff also claims she was mis-charged during a second purchase of Granny Smith

*Third*, Plaintiff alleges Publix sometimes displays incorrect unit prices on some products' shelf tags. FAC ¶¶ 94-96. Plaintiff claims this occurred when she purchased a 20.9-ounce container of Enfamil ProSobee baby formula. *Id.* Plaintiff concedes that she was charged the correct total price for the product but notes that the unit price of $1.59/ounce displayed on the shelf tag was mathematically incorrect. *Id.* The FAC is silent as to whether she brought this purported discrepancy to Publix's attention, but alleges she was not refunded for this item without saying whether she in fact sought a refund. *Id.* ¶ 97.

Plaintiff's FAC also pleads a fourth theory: that Publix marks items on clearance that ring up full price at the point of sale. *Id.* ¶ 89-90. Plaintiff claims this occurred when she purchased Stem bug spray on April 6, 2025, after the filing of this lawsuit. Plaintiff admits she was refunded by Publix for this purchase. *Id.* ¶¶ 91, 97.

Plaintiff's FAC alleges four counts for: (i) violation of the FDUTPA; (ii) declaratory judgment pursuant to the FDUTPA; (iii) unjust enrichment; and, (iv) breach of contract. The FAC requests damages, declaratory, and injunctive relief, and seeks to certify four nationwide classes, based on the foregoing four theories:

- Weighted Goods Class - All consumers who purchased a product in which the Publix point-of-sale ("POS") system changed the weight of product at a Publix store located in the United States, as detailed herein, within the statute of limitations period.

- Expired Sales Signs Class - All consumers who purchased a product with an expired sales sign at a Publix store located in the United States, as detailed herein, within the statute of limitations period.

- Clearance Sales Signs Class - All consumers who purchased a product with a false clearance sale sign at a Publix store located in the United States, as detailed herein, within the statute of limitations period.

---

Apples at a different Publix store on February 15, 2025, but it is unclear from her FAC if Plaintiff alleges those sale signs were also out of date. FAC ¶¶ 87-88.

- <u>Baby Formula Class</u> - All consumers who purchased baby formula with a higher price per unit than the price per unit listed on the shelf at a Publix store located in the United States, as detailed herein, within the statute of limitations period.

The Court should dismiss the FAC for multiple reasons. For starters, the FAC is a quintessential shotgun pleading, which reiterates all allegations in every count contrary to well-established law in the Eleventh Circuit and Rule 8.  Moreover, it is evident that Plaintiff lacks Article III standing to prosecute her claims. She suffered no injury-in-fact for various reasons, and certainly not one fairly traceable to Publix's conduct. Plaintiff also lacks standing to seek injunctive relief because she is aware of the alleged deception and not at risk of being deceived in the future.  Moreover, even if she had standing, Plaintiff's claims are barred by the voluntary payment doctrine as to the products that she purchased with full knowledge of the alleged pricing discrepancies. And for several additional reasons set forth below, Plaintiff fails to allege viable FDUTPA, unjust enrichment, and breach of contract claims.

**LEGAL STANDARD**

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction based on a facial attack to a plaintiff's standing challenges whether Plaintiff "sufficiently alleged a basis of subject matter jurisdiction," applying the standards similar to those governing 12(b)(6) review. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335 (11th Cir. 2013). On the other hand, when "a Rule 12(b)(1) motion takes the form of a factual attack, the movant challenge[s] the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Oleary v. HCA Healthcare, Inc.*, No. 19-80647-CIV-ALTMAN, 2020 WL 597361, at *2 (S.D. Fla. Feb. 4, 2020) (cleaned up).

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, Plaintiff must plead "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its

face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663-64. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted). "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## I.    THE FAC IS A SHOTGUN PLEADING

The FAC is a quintessential shotgun pleading in that each count incorporates "all of the allegations contained in this complaint as if fully set forth herein" (*See* FAC ¶¶ 187, 207, 213, 225); it fails to separate different theories of allegedly offending conduct into different causes of action; and it incorporates vague and immaterial facts throughout. *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1322-23 (11th Cir. 2015) (describing the four primary types of shotgun pleadings). This alone subjects Plaintiff's complaint to dismissal. *See Jovine v. Abbott Labs., Inc.,* 795 F. Supp. 2d 1331, 1336-37 (S.D. Fla. 2011) (dismissing complaint in its entirety as a shotgun pleading where "the eight-count Amended Complaint incorporates all of the 'foregoing allegations' by reference into each subsequent claim for relief ").[2]

This pleading deficiency is particularly problematic here as it lumps together purchases for which Plaintiff admits she was refunded; purchases which Plaintiff knowingly made at an allegedly incorrect price; purchases for which Plaintiff failed to request a refund despite knowing a refund

---

[2] Plaintiff goes beyond the typical "mortal sin of re-alleging all *preceding* counts" in subsequently pled counts *Weiland*, 792 F.3d at 1322 (emphasis added), and instead incorporates "*all of the allegations contained in this complaint* as if fully set forth herein", thus incorporating every count of the FAC into every other count regardless of whether they precede or follow the count into which they are incorporated.

method exists; and vague allegations of purchases which Plaintiff now recalls making over a year ago but which were never mentioned in her original complaint. Moreover, Plaintiff's FAC incorporates *every count* in the FAC into every other count, rendering Plaintiff's claims utterly nonsensical. For example, Plaintiff's declaratory judgment count "incorporates *all of the allegations contained in this complaint* as if fully set forth herein" (emphasis added), including those related to allegedly expired sales signs, allegedly incorrect clearance pricing, allegedly incorrect unit pricing, and Publix's alleged failure to honor the Publix Promise, but only seeks relief related to Publix's alleged "conduct of falsely inflating product weight". (FAC ¶¶ 207, 211).

Similarly, Plaintiff's FAC attempted to bolster Plaintiff's original allegations with allegations related to purported post-lawsuit changes to Publix's POS system (FAC ¶¶ 167-173) which Plaintiff incorporates into every count, but Plaintiff asserts no cause of action as a result, rendering such allegations immaterial. Plaintiff's FAC likewise alleges purchases by consumers who are not named as plaintiffs (FAC ¶¶ 111-135), which this Court can and should disregard as they have no bearing on Plaintiff's claims. Because Plaintiff's FAC is a shotgun pleading, it must be dismissed.

## II.   PLAINTIFF LACKS ARTICLE III STANDING

To demonstrate standing, Plaintiff has the burden to show (1) she sustained an injury-in-fact that is (2) fairly traceable to Publix's challenged conduct and (3) redressable by a favorable ruling. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). The "injury [must] be concrete, particularized, and actual or imminent." *Monsanto Co. v. Geerston Seed Farms*, 561 U.S. 139, 149 (2010). The injury cannot be "speculative," *Lujan*, 504 U.S. at 564 n.2, and must be supported by more than mere "conclusory allegations," *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1344 (11th Cir. 2021).

Plaintiff lacks standing for six separate reasons: (A) she admits she was refunded by Publix for some of the very purchases for which she seeks to recover in this lawsuit; (B) she paid the correct total price for the Granny Smith Apples and Enfamil and thus suffered no injury-in-fact from the allegedly-incorrect prices listed for those products; (C) she purchased products with actual knowledge of the allegedly-incorrect pricing and thus any injury is traceable to her fully-informed purchasing decision, not Publix's alleged misconduct; (D) her additional purchase allegations fail to plausibly establish an injury-in-fact; (E) she incurred no injury-in-fact because Publix's policies, of which she was aware, provided her with the option for a full, unconditional money-back guarantee; and (F) her admitted actual awareness of Publix's alleged "deceptive pricing schemes" establishes that Plaintiff is not at risk of being deceived in the future and lacks standing to seek prospective injunctive relief.

## A.  Facial Attack:  No Injury-In-Fact Where Plaintiff Was Refunded

Plaintiff admits that she was refunded by Publix for her purchases of Granny Smith Apples, Cranberry Cheddar Cheese, Hormel Ham, and bug spray. (FAC ¶ 97)  Moreover, Plaintiff admits she was refunded for her newly pled purchase of three hams allegedly made on May 25, 2024. (FAC ¶¶ 146-150)  Thus, as to these purchases, Plaintiff sustained no injury and these purchases provide no basis for Plaintiff to sue.  *See e.g., Barnett v, Fitness Int'l, LLC,* No. 20-60655-CIV-DIMITROULEAS, 2020 WL 6078223 (S.D. Fla. Sept. 17,  2020) (finding plaintiff lacks Article III standing where his alleged injury - failure to refund his membership fees - was "fully redressed" when his membership fees were refunded prior to filing suit).

## B.  Facial Attack: No Injury-In-Fact From Apples And Enfamil Purchases

Plaintiff admits that, when she purchased the Granny Smith Apples, the sale was over and the listed sale price was out of date. When she was charged the non-sale price for the apples,

Plaintiff was therefore charged the correct price and did not overpay. Likewise, with regard to the Enfamil, Plaintiff was charged the correct total price, as stated on the shelf tag.

Plaintiff does not allege that the Granny Smith Apples or Enfamil—for which she was admittedly charged the correct total price—were worthless or unusable products or that she failed to receive the full value of her purchases. Plaintiff received the benefit of the bargain, did not overpay, and thus sustained no economic injury. *See, e.g.*, *Ramirez v. Kraft Heinz Foods Co.*, 684 F. Supp. 3d 1253, 1258-60 (S.D. Fla. 2023) (finding no injury-in-fact; noting overpayment theory requires allegations that alleged misconduct stripped the product of its value; and explaining that the plaintiff's repeated purchase of the product over two months rendered "implausible" her allegation she did not receive the benefit of her bargain); *Green v. PepsiCo, Inc.*, No. 18-62011-Civ-Scola, 2019 WL 8810364, at *2-3 (S.D. Fla. Apr. 12, 2019) (finding the plaintiff lacked standing where alleged economic harm was not accompanied by any allegation that problem with the product caused health problems or other injuries, noting plaintiff "purchased oatmeal and 'received just that—the benefit of her bargain'" (quoting *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 320 (5th Cir. 2002))). Because Plaintiff suffered no injury from her purchases of Granny Smith Apples or Enfamil, she lacks standing to prosecute any claims based on those products.

### C.  Facial Attack: Alleged Injury Not Fairly Traceable to the Complained-of Conduct

"Article III standing requires a 'causal connection between the injury and the conduct complained of.' In other words, the injury must be 'fairly traceable to the challenged action of the defendant.'" *In re Fortra File Transfer Software Data Sec. Breach Litig.*, 749 F. Supp. 3d 1240, 1261 (S.D. Fla. 2024) (citing *Lujan*, 504 U.S. at 560).[3] The Eleventh Circuit has made clear that

---

[3] The Eleventh Circuit recently emphasized that the fairly traceable requirement "is not toothless." *Walter v. Fast AC, LLC*, 60 F.4th 642, 650 (11th Cir. 2023). "A plaintiff must at least demonstrate

"an injury is not fairly traceable to the actions of a defendant … when a plaintiff independently caused his own injury." *Swann v. Sec.*, 668 F.3d 1285, 1288 (11th Cir. 2012) (quoting *Lujan*, 504 U.S. at 560); *see also Cordoba v. DIRECTV, LLC*, 942 F.3d 1259 (11th Cir. 2019).

To the extent Plaintiff was overcharged for the original Weighted Goods purchases (the Extra Lean Pork Tenderloin, Kentucky Legend Turkey Breast, Kentucky Legend Smoked Ham, Springer Mountain Farms whole chicken, Hormel Ham, and Cranberry Cheddar Cheese), Plaintiff fails to plausibly allege that any resulting economic injury was fairly traceable to Publix's conduct. Instead, any alleged injury is directly traceable to and caused by Plaintiff's voluntary decision to purchase the products despite realizing the products rang up incorrectly.

Under well-established law, such a self-inflicted injury does not give rise to standing. *See, e.g.*, *Schalamar Creek Mobile Homeowner's Ass'n v. Adler*, 855 F. App'x 546, 551 (11th Cir. 2021) (holding no standing where injury was caused by the plaintiffs' own purchasing decisions "with eye 'wide open'" to complained-of issues); *McDowell v. Miami Dade Hous.*, No. 19-24030-CIV, 2020 WL 13615947, at *4 (S.D. Fla. May 18, 2020) ("Because Plaintiff's actions independently resulted in her alleged homelessness, the homelessness does not amount to an injury cognizable under Article III and, as a result, Plaintiff lacks standing to sue."), *R&R adopted* 2020 WL 13615964 (S.D. Fla. June 11, 2020); *Wasser v. All Mkt., Inc.*, 329 F.R.D. 464, 470-71 (S.D. Fla. 2018) ("[A] controversy is not justiciable when a plaintiff independently caused his own injury."); *Samuels v. Fed. Hous. Fin. Agency*, 54 F. Supp. 3d 1328, 1334-35 (S.D. Fla. 2014) (finding organization lacked standing where claimed injury of diverted funds was self-inflicted); *see also, e.g.*, *City of S. Miami v. Governor*, 65 F.4th 631, 638 (11th 2023) ("plaintiffs cannot

---

*factual* causation between his injuries and the defendant's misconduct." *Id.* (citing *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2556 (2019)).

manufacture standing merely by inflicting harm on themselves"); *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 931 (11th Cir. 2020) (same); *Clapper v. Amnesty Int'l, Inc.*, 568 U.S. 398, 402, 418, n.7 (same); *Pevsner v. E. Air Lines, Inc.*, 493 F. 2d 916, 917-18 (5th Cir. 1974)[4] (explaining that a plaintiff who was not overcharged could not manufacture standing by requesting to be overcharged because a self-inflicted injury does not create standing); *Nat'l Family Planning & Reprod. Health Ass'n v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) ("We have consistently held that self-inflicted harm doesn't satisfy the basic requirements for standing. Such harm does not amount to an 'injury' cognizable under Article III. Furthermore, even if self-inflicted harm qualified as an injury it would not be fairly traceable to the defendant's challenged conduct.").

Because Plaintiff's claimed injury is self-inflicted and therefore not fairly traceable to Publix's alleged "deceptive pricing schemes," she lacks standing to proceed on any of her claims and her FAC should be dismissed in full.

### D. Facial Attack: Alleged Injury Not Plausibly Pled

Plaintiff's FAC adds allegations about purchases purportedly made in the Spring 2024 that were not alleged in Plaintiff's original complaint. (FAC ¶ 142 (a block of Boars Head Parmigiano Reggiano"), ¶ 143 (beef tenderloin), ¶ 144 ("a chicken")) However, it is unclear the significance of these allegations as Plaintiff does not tie them to any of the allegedly deceptive pricing theories outlined in her complaint or plausibly plead how she was overcharged.  Likewise, because of the shotgun nature of Plaintiff's FAC, it is unclear if Plaintiff's claims are based on these purchases,

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit from before October 1, 1981.

or if these purchases were simply included in an attempt to plead around Publix's Publix Promise argument.[5] In any event, these allegations fail to plausibly plead an injury in fact.

In Paragraph 142, Plaintiff pleads that she did not receive the sale price for an unspecified weight of Parmigiano Reggiano cheese, which she alleges was on sale for $.50 off per pound. Plaintiff alleges she requested a refund but was told she received the sale price and that she "conceded." Plaintiff does not allege the details of any sale, or any facts to make plausible her claim that she was overcharged other than simply saying it occurred.

Similarly, in Paragraph 144, Plaintiff alleges she purchased a chicken. Plaintiff alleges that she was overcharged, though her allegations are unclear as to what she believes she was charged or what she believed the correct purchase price to be.[6] Plaintiff alleges that "the cashier insisted that she received her savings and again, Plaintiff conceded". Here too, Plaintiff fails to plausibly plead facts to demonstrate that she was, in fact, not charged a valid sale price.

Finally, Paragraph 143 alleges that Plaintiff "did not receive the sales price for a beef tenderloin that she purchased". Plaintiff again does not allege how or why she believes this occurred – only that she believed she did not receive the sales price, that a cashier told her she did, and that she "conceded". Such allegations are utterly insufficient to plausibly plead an injury-in-fact.

### E.  Factual Attack: Plaintiff Did Not And Could Not Suffer An Injury-In-Fact

It is well-settled that a plaintiff does not incur an economic injury where the defendant offers a full, unconditional money-back guarantee to unsatisfied customers, as Publix does with its

---

[5] The allegations about these 2024 purchases appear under the incongruous heading "Factual Allegations Since the Filing of the Initial Complaint".

[6] Plaintiff refers to a "tag stat[ing] it was around $12 with the non-sale price per pound on the tag". Thus, Plaintiff's complaint is unclear as to whether the $12 was the intended sale price, or the non-sale price.

Refund Policy, Publix Guarantee and Publix Promise. *See, e.g.*, *Valiente v. Publix Super Markets, Inc.*, No. 22-22930-Civ-Scola, 2023 WL 3620538, at \*3 (S.D. Fla. May 24, 2023) (finding plaintiff lacked standing due to the Publix Guarantee); *see also, e.g.*, *Perez v. The Scotts Co., LLC*, No. 24-60516-CIV-WPB, 2024 WL 5219736, at \*3-5 (S.D. Fla. Nov. 15, 2024) (finding plaintiffs lacked injury-in-fact where they could have, but did not, use defendants' unconditional money-back guarantee); *Fields v. Walmart Inc.*, No. 3:20-cv-356-D, 2024 1984586, at \*2 (M.D. Fla. Apr. 8, 2024) (finding plaintiff failed to demonstrate an injury-in-fact in light of unconditional money-back guarantee); *Hardy v. Bed Bath & Beyond, Inc.*, No. 17-22315-Civ-Scola, 2018 WL 1272687, at \*1-2 (S.D. Fla. Mar. 9, 2018) (finding plaintiff lacked standing in light of full refund offer on billing documentation, which mooted the claim of economic injury).

Publix's Refund Policy is stated on its website and provides that "[i]f for any reason you are unhappy with your purchase, we want to make it right.  To return or exchange an item, simply bring it to the store with a receipt and we will replace it or give you a full refund in the form of your original payment." *See* Publix Refund Policy, *available at https://www.publix.com/pages/policies/refund-policy* (last accessed June 23, 2025).[7]

The Publix Guarantee provides: "We will never knowingly disappoint you. If for any reason your purchase does not give you complete satisfaction, the full purchase price will be cheerfully refunded immediately upon your request." *See Valiente*, 2023 WL 3620538, \*3 n.2

The Publix Promise "guarantees that if during checkout, the scanned price of an item (excluding alcohol and tobacco products) exceeds the shelf price or advertised price, we will give

---

[7] The Court may consider Publix's Refund Policy given Plaintiff's repeated reference to whether refunds were provided throughout her FAC and her reference to Publix refund policies.  *See e.g,* FAC ¶ 136 (alleging Publix noncompliance with "refund policies").

12

the customer one of that item free. We will charge the lower price for the remaining items." (FAC ¶¶ 126-127, 227).

Plaintiff's Complaint demonstrates she is well-aware of these Publix policies, as she admits she received refunds for some of the purchases described in her Complaint. (FAC ¶ 97) Plaintiff also admits she chose not to request a refund in some instances because she thought the process was too inconvenient. (*Id.* ¶¶ 98-101) As to those products for which Plaintiff fails to allege that she requested a refund, Plaintiff lacks standing. *See, e.g.*, *Valiente*, 2023 WL 3620538, at *2-5; *Hardy*, 2018 WL 1272687, at *2.

Plaintiff attempts to save her claims by alleging certain instances wherein she claims Publix did not provide a refund (FAC ¶¶ 142, 144) or honor the Publix Promise (*id.* ¶ 143). As to two of those purchases, Plaintiff's allegations fail to mention the Refund Policy, Publix Promise or Publix Guarantee whatsoever. (FAC ¶¶ 142, 144) Indeed as to the "chicken" purchase, Plaintiff fails to plead that she requested a refund at all. (FAC ¶ 144) As to the third (beef tenderloin), although Plaintiff alleges that the store manager failed to honor the Publix Promise because "the meat was too expensive" (suggesting that Plaintiff sought a free beef tenderloin rather than simply to return the item for a refund of her purchase price), Plaintiff does not allege that she requested an unconditional refund under the Publix Guarantee, or sought to return the items under Publix's separate Refund Policy. And in each of the three instances, Plaintiff's vague pleading fails to plausibly allege an injury, as discussed above, making the refund status as to these items irrelevant.

Because Plaintiff's purchases were subject to an unconditional money-back guarantee, Plaintiff sustained no injury-in-fact, lacks Article III standing, and the FAC should be dismissed.

**F.  Facial Attack: Plaintiff Lacks Standing For Her Requested Injunctive Relief**

The FAC seeks injunctive relief to ensure the pricing for weighted goods is "accurate and

product weights are not changed." FAC ¶ 211(B); *see also id.* ¶ 235(4) (requesting an order that Publix "correct the deceptive behavior"). "The 'injury-in-fact' demanded by Article III requires an additional showing when injunctive relief is sought. Plaintiffs seeking injunctive relief 'must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct *in the future.*'" *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013) (quoting *Wooden v. Bd. of Regents of Univ. Sys.,* 247 F.3d 1262, 1284 (11th Cir. 2001)); *Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1373–74 (S.D. Fla. 2015) ("Although the FDUTPA allows a plaintiff to pursue injunctive relief even where the individual plaintiff will not benefit from an injunction . . . it cannot supplant constitutional requirements Article III of the Constitution requires that a plaintiff seeking injunctive relief allege a threat of future harm."); *accord Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1253 (11th Cir. 2023). In *Piescik v. CVS Pharmacy, Inc.*, 576 F. Supp. 3d 1125, 1131 (S.D. Fla. 2021), for example, the court dismissed the request for injunctive relief because the plaintiff was "now acutely aware" of the allegedly deceptive conduct and thus not at risk of being misled again.

The same is true here. Plaintiff has not alleged—and cannot allege—a threat of being deceived in the future because her FAC concedes she is already aware of the allegedly-deceptive pricing. She is therefore not at risk of being deceived in the future, requiring dismissal of her request for injunctive relief.

## III.   PLAINTIFF FAILS TO STATE ANY VIABLE CAUSES OF ACTION

### A.   <u>The Voluntary Payment Doctrine Bars Plaintiff's Claims As to Knowing Purchases</u>

"The voluntary payment defense has existed in Florida for over a century." *Easter v. City of Orlando*, 249 So. 3d 723, 727 (Fla. 5th DCA 2018). It provides that "where one makes a payment of any sum under a claim of right with knowledge of the facts, such a payment is

voluntary and cannot be recovered." *City of Miami v. Keton*, 115 So. 2d 547, 551 (Fla. 1959); *accord Hall v. Humana Hosp. Daytona Beach*, 686 So. 2d 653 (Fla. 5th DCA 1996). "The theory behind the doctrine is that if a party would resist an unjust demand of payment, he must do so at the 'threshold.'" *McDermott v. L.A. Fitness Int'l, LLC*, No. 211CV192FTM36DNF, 2012 WL 13098143, at *5 (M.D. Fla. Mar. 21, 2012) (citing *Sanchez v. Time Warner, Inc.*, No.98-21—CIV-T-26A, 1998 WL 834345, at *4 (M.D. Fla. Nov. 4, 1998)). Though the voluntary payment doctrine is usually raised as an affirmative defense, it "is properly considered on a motion to dismiss if it is evident from the complaint that the payment was made by the plaintiff voluntarily and with knowledge of the facts." *Id.*; *see, e.g.*, *Sanchez*, 1998 WL 834345, at *4 (granting motion to dismiss based on voluntary payment doctrine).

Here, it is evident from Plaintiff's Complaint that she chose to proceed with her purchases of the subject products at the price at which they rang up at the point-of-sale, ***despite actually knowing that the prices charged were, according to her theory, incorrect***. Plaintiff does not allege her purchases were made under duress; nor could she plausibly do so.[8] Indeed, Plaintiff could have asked for the products to be voided from her receipt, as she did for two packages of GreenWise Boneless Chicken Fillets bought at the same time as the Extra Lean Pork Tenderloin at issue. *See* Receipt image, FAC ¶ 11. But, in spite of knowing of this possibility, she did not do so. Because Plaintiff voluntarily made the purchases at issue at the prices allegedly charged and fully aware at

---

[8] The FAC goes to great lengths to describe why Plaintiff's decision to shop at Publix is not voluntary (FAC ¶¶ 156-159); however, none of Plaintiff's allegations have any legal bearing on application of the voluntary payment doctrine, nor does Plaintiff plausibly allege that her purchases once in the store were not voluntary. Although Plaintiff alleges that the consumer experience at checkout is one that is not conducive to a voluntary decision, Plaintiff's FAC belies that – Plaintiff time and time again took the time to photograph the check-out process, seek to have items voided from her receipt, and seek refunds when she believed she was being charged incorrectly.

the time of purchase of the facts supporting her claims, her claims based on those purchases are all barred by the voluntary payment doctrine.

**B.** **The FDUTPA Claims (Counts I & II) Fail On Multiple Grounds**

  **i.** **Plaintiff Incurred No Actual Damages And Is Not Aggrieved**

To recover money damages under the FDUTPA, a plaintiff must establish three elements: a deceptive act or unfair practice; causation; and actual damages. *See Rollins, Inc. v. Butland*, 951 So. 2d 860, 861 (Fla. 2d DCA 2006); Fla. Stat. § 501.211(2). "Actual damages are the difference between the value of a product and the amount the plaintiff paid for it." *Bechtel v. Winn-Dixie Stores, Inc.*, No. 23-cv-1470 HES-PDB, 2024 U.S. Dist. LEXIS 198109, at *5-6 (M.D. Fla. Oct. 31, 2024) (dismissing FDUTPA claims where plaintiffs did not allege they received less than what they paid for, and thus failed to plead actual damages).

To recover declaratory relief under the FDUTPA, a plaintiff must show that they have been aggrieved. *See* Fla. Stat. § 501.211(1). A plaintiff is "aggrieved" if they suffer a loss "by the alleged unfair and deceptive acts." *Faulkner Press, L.L.C. v. Class Notes, L.L.C.*, No. 08cv49-SPM, 2010 WL 996506, at *3 (N.D. Fla. Mar. 17, 2010) (dismissing counterclaim for declaratory relief under the FDUTPA for failure to allege "a loss resulting from the sale of [the counter-defendant's] course materials"); *see also Bechtel*, 2024 U.S. Dist. LEXIS 198109, at *8 ("A party is aggrieved if the alleged deception caused a non-speculative injury that has affected the plaintiff beyond a general interest in curbing deceptive or unfair conduct." (quotation marks and citation omitted)). Thus, in cases where a plaintiff has not incurred actual damages, that plaintiff is also not aggrieved. *Id.* at *4 ("[T]his Court finds that Plaintiffs have not alleged actual damages. For that reason, Plaintiffs also have not alleged they were 'aggrieved.'").

Here, as explained above, as to Plaintiff's purchases of Granny Smith Apples, Cranberry Cheddar Cheese, Hormel Ham, bug spray and Enfamil, Plaintiff sustained no actual damages and is not aggrieved. Plaintiff admits she was refunded for the purchases of Granny Smith Apples, Cranberry Cheddar Cheese, Hormel Ham, and bug spray. Moreover, Plaintiff admits the sale on the Granny Smith Apples was over. Thus, when she was charged the non-sale price at the point-of-sale, Plaintiff was charged the correct price. She was not overcharged, did not sustain any actual damages, and is not aggrieved. Similarly, as to Enfamil, Plaintiff was charged the correct total price, which was prominently displayed adjacent to the allegedly-incorrect unit price. FAC ¶ 95. Plaintiff does not—and cannot—allege the "actual value" of the Enfamil was the allegedly-incorrect unit price as opposed to the total price displayed and paid.

Thus, as to both the Granny Smith Apples and the Enfamil, Plaintiff received exactly what she purchased. Both products were sold for the expected total price, and the value of neither product was affected by mislabeling of the price. Indeed, as to both products (and, in fact, all the products at issue in this case), Plaintiff does not allege that the products were defective, unfit for their intended use, unsafe, valueless, or inconsumable. Plaintiff thus incurred no actual damages. *See Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1100-01 (11th Cir. 2021) (affirming dismissal of FDUTPA claim where plaintiff "failed to state a plausible claim for actual damages"); *Bechtel*, 2024 U.S. Dist. LEXIS 198109, at *5 ("Plaintiffs have not alleged actual damages because they do not claim the BOGO products were worth less than they paid."); *Mora v. Visionworks of Am., Inc.*, No. 8:18-cv-335-T, 2019 WL 13248146, at *5 (M.D. Fla. Oct. 31, 2019) (rejecting FDUTPA claim because, "[w]ithout being able to show the value of what [they] received is less than what [they] paid, [plaintiffs] cannot succeed on [their] FDUTPA [claim]"). And absent actual damages, Plaintiff is not aggrieved. *See Bechtel*, 2024 U.S. Dist. LEXIS 198109, at *4.

Plaintiff's FDUTPA claims must be dismissed for these reasons alone.[9]

### ii.  Publix's Complained-Of Conduct Was Not Deceptive

"[D]eception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007). This standard requires "probable, not possible, deception . . . likely to cause injury to a reasonable relying consumer." *Id.* (quoting *Millennium Comm. & Fulfillment, Inc. v. Dep't of Legal Affairs*, 761 So. 2d 1256, 1263 (Fla. 3d DCA 2000)). Thus, "an objective test is used to determine whether the alleged practice was likely to deceive a consumer." *Marache*, 17 F.4th at 1098.

In determining whether reasonable consumers are likely to be misled, "context is crucial." *Brown v. Kellogg Sales Co.*, No. 20-cv-7283, 2022 WL 992627, at *3 (S.D.N.Y. Mar. 31, 2022). The Court ***must consider all information available to Plaintiff*** in deciding whether a reasonable consumer in her shoes was probably—not possibly—deceived. *Zlotnick*, 480 F.3d at 1284. Where a plaintiff "base[s] deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Kurimski v. Shell Oil Co.*, No. 21-80727-CV-MIDDLEBROOKS, 2022 WL 2913742, at *5 (S.D. Fla. June 30, 2022).

Here, this Court can easily conclude that a consumer acting reasonably in Plaintiff's circumstances would not have been "deceived" by the alleged pricing issues.

<u>First</u>, as to the weighted goods purchases, Plaintiff's allegations demonstrate that a consumer acting reasonably in the circumstances—at a self-checkout lane, where the screen clearly displayed the weight differently than on the product label—would know the weighted goods were

---

[9] Furthermore, Plaintiff could not have incurred any actual damages or been aggrieved as to any of her purchases because of the Publix policies offering an unconditional refund. *See Valiente*, 2023 WL 3620538, at *2-5; *Hardy*, 2018 WL 1272687, at *2.

ringing up incorrectly and not be "deceived" that the charged price was correct. Indeed, the Complaint demonstrates—with photographs taken in real time—exactly how to determine that the price was ringing up incorrectly and ***how Plaintiff herself determined that*** prior to and during her check-out. A consumer acting reasonably in the circumstances would not ignore those recognized pricing discrepancies and proceed with the purchase under the belief they were nevertheless being charged the correct price. Such a belief would be patently unreasonable.

<u>Second</u>, as to the Granny Smith Apples, a consumer acting reasonably in the circumstances who learned that a sale had ended would not expect a product to ring up at the expired sale price. Moreover, Plaintiff's FAC makes clear that Plaintiff was not deceived – she notified Publix of the expired sale sign and obtained a refund of her purchase.

<u>Third</u>, as to the Enfamil purchase, Plaintiff's claim ignores the full context of the transaction, instead cherry-picking only certain information available on the shelf tags in order to manufacture a lawsuit. Plaintiff does not allege that the total price, which was primarily advertised in much larger font on the shelf tags, were incorrect or did not match the total price charged at checkout. Nor does Plaintiff allege that the total price was a function of, or dependent on, the unit price, distinguishing the Enfamil purchase from those involving sale and non-sale unit pricing of weighted goods. *E.g.*, *Kukorinis v. Walmart, Inc.*, No. 19-CV-20592-Martinez, 2020 WL 13388297, at *6 (S.D. Fla. June 1, 2020); *Kukorinis v. Walmart, Inc.*, No. 8:22-cv-2402-VMC-TGW, 2023 WL 4364454, at *7 (M.D. Fla. July 6, 2023). No consumer acting reasonably in the circumstances would ignore the prominently displayed total prices for the Enfamil, and instead look solely at the smaller-printed unit prices and multiply that by the smaller-printed total units to get the expected total price. Moreover, a consumer acting reasonably (especially one relying on the unit pricing, which Plaintiff does not allege she did) would confirm the accuracy of the unit

price via simple math based on total price and the quantity, all of which is fully disclosed. A consumer acting reasonably understands the total retail price listed for a product (other than one sold by weight) is controlling and, indeed, that exact same price is disclosed to the customer again at the point-of-sale during the checkout process, eliminating any possibility of confusion or deception from an incorrect unit price.

_Finally_, as to the bug spray, Plaintiff's FAC demonstrates that a reasonable consumer would not be deceived by a clearance price ringing up incorrectly, where the price was clearly visible at check-out and on a consumer's receipt.  In fact, Plaintiff here was not deceived because she recognized the mistake and obtained a refund.

As this Court has recognized, "[r]easonable consumers generally do not choose to ignore accurate pricing information displayed conspicuously during the transaction." _Kurimski_, 2022 WL 2913742, at *7-8, 10, 12. After all, Plaintiff could have declined at checkout to make any of the purchases at issue if the pricing displayed at the point-of-sale did not match her expectations. Courts have dismissed FDUTPA claims for that exact reason. _Id._ (dismissing FDUTPA claim because, even if signage was misleading as to the price of gas, the "disclosure at the pump" of the price a consumer would be charged "negate[d] any claim of deception"). Plaintiff also could have sought to return any purchased items to receive a refund.  On these facts, there is no deception and therefore no FDUTPA claim.

### iii.  Plaintiff's FDUTPA Claims Fail For Lack Of Causation

FDUTPA causation "must be direct, rather than remote or speculative." _Hennegan Co. v. Arriola_, 885 F. Supp. 2d 1354, 1361 (S.D. Fla. 2012). Here, for all the reasons described above, Plaintiff's allegations also fall well-short of establishing FDUTPA causation. A consumer, like Plaintiff, who purchases a product with full knowledge of the circumstances does not incur any

damages caused by the allegedly-deceptive act and cannot maintain a viable FDUTPA claim. *See, e.g.*, *Kurimski*, 2022 WL 2913742, at *11 (finding "actual knowledge breaks the chain of causation" for FDUPTA claim); *Hutson v. Rexall Sundown Inc.*, 837 So. 2d 1090, 1093 (Fla. 4th DCA 2003) (explaining that "a person who had actual knowledge of the number of softgels needed to be taken per serving would not have suffered any damages as a result of the alleged deceptive trade practice and, therefore, would have no cause of action [for violation of FDUTPA]"). Likewise, a consumer who was refunded for her purchases does not incur damages caused by any allegedly deceptive act.  Plaintiff's FDUTPA claim fails.

### C.  The Unjust Enrichment Claim (Count III) Fails For Several Reasons

A claim for unjust enrichment is reserved for situations where, even though the defendant committed no misconduct, it would still "be inequitable for the defendant to retain [a] benefit without paying for it." *Day v. Sarasota Doctors Hosp., Inc.*, No. 19-cv-1522-T-33TGW, 2020 WL 7390153, at *7 (M.D. Fla. Feb. 7, 2020) (cleaned up). Here, as to the products for which Plaintiff received a refund, there is clearly no inequity and no unjust enrichment.

Likewise, as to the products Plaintiff knowingly purchased at allegedly incorrect prices, there is no inequity because, as discussed, Plaintiff purchased the products with actual knowledge of the claimed pricing issues. *See* Restatement (Third) of Restitution and Unjust Enrichment § 2 (explaining there is no liability to a claimant characterized as officious, an intermeddler, or a volunteer);[10] *see also Systruck Co., LLC v. Sikorsky Aircraft Corp.*, No. 2:09-CV-267, 2012 WL 12898020 at *3 (M.D. Fla. Jan. 31, 2013) (rejecting unjust enrichment claim where plaintiff had notice commissions would not be paid but nonetheless gratuitously and "at its own risk" undertook

---

[10] *See City Nat'l Bank of Fla. as Tr. of Land Tr. no. 2400-9492-0 v. Signature Land, Inc.*, 397 So. 3d 1133, 1135 (Fla. 5th DCA 2024) (explaining Florida courts have adopted and recognized the officious intermeddler doctrine)

work; the conduct was "gratuitous and officious and therefore does not support a claim for unjust enrichment"); *Nursing Care Servs. Inc., v. Dobos*, 380 So. 2d 516, 518 (Fla. 4th DCA 1980) ("[W]here a person performs labor for another without the latter's request or implied consent, however beneficial such labor may be, he cannot recover therefore."). Further, Plaintiff failed to invoke the Publix policies that would have allowed her to obtain a full, unconditional refund as to those purchases.  And as to the newly pled purchases for which Plaintiff claims she was denied a refund, Plaintiff fails to plausibly plead how Publix was unjustly enriched for all the reasons described above.

Under all of these circumstances, there is nothing inequitable that would warrant Publix disgorging the money Plaintiff paid for these non-defective products.  To the contrary, Plaintiff received the benefit of her bargain. *See Marrache*, 17 F.4th at 1102 (holding unjust enrichment claim failed where plaintiff received what was bargained for). Plaintiff purchased certain products at prices that were clearly displayed at check-out, as evidenced by the photographic evidence throughout the FAC and Plaintiff's own allegations which demonstrate awareness at the point of sale when she made her decision to request (or not request) refunds. Plaintiff does not allege any of the products were defective, worthless, or unusable. Plaintiff thus received the benefit of her bargain as to each of her purchases and cannot now claim unjust enrichment.

Finally, Plaintiff's unjust enrichment claim fails because it is an ***equitable*** claim that cannot be predicated on ***unlawful*** or ***wrongful*** conduct. *See Day*, 2020 WL 7390153, at *7; Plaintiff grounds her unjust enrichment claim on the same allegedly-deceptive pricing practices upon which she bases her FDUTPA claim. Florida law does not permit Plaintiff to repackage claims alleging legal wrongs as "alternative" equitable unjust enrichment claims. *See Prohias v. Pfizer Inc.*, 490 F. Supp. 2d 1228, 1237 (S.D. Fla. 2007).

### D. **The Breach of Contract Claim (Count IV) Fails For Several Reasons**

Plaintiff's FAC asserts a claim for breach of contract, alleging that Publix breached a contract with Plaintiff by failing to honor the Publix Promise. (FAC ¶ 227, 230)  Plaintiff's breach of contract claim must be dismissed.  A valid breach of contract claim pleads the existence of a valid contract, a breach of that contract and damages caused by the breach.  *Vanguard Plastic Surgery, PLLC v. Cigna Health & Life Ins. Co.*, No. 0:22-cv-61086-WPD, 2023 WL 2168513, at *3 (S.D. Fla. Jan. 18, 2023) (finding breach of contract claim not plausibly pled).  In order for a valid contract to exist, there must be an offer, acceptance of that offer, mutual consideration, and an intent to be bound as evidenced by a meeting of the minds.  *Chubb Seguros Chile S.A. v. Freight Logistics Int'l LLC*, 588 F. Supp. 3d 1312, 1319 (S.D. Fla. 2022) (dismissing contract claim as not plausibly pled where there are "[n]o allegation of … making of an offer, no allegations of acceptance, and no allegation that there was an exchange of valuable consideration").

Here, Plaintiff fails to allege any of these elements to support this Court interpreting the Publix Promise, a customer service policy, as a legally enforceable contract to provide free items to customers. Plaintiff's allegations fail to plead any mutual consideration for the Publix Promise.[11] And, although Plaintiff incorporates every allegation of her FAC into her breach of contract claim, the Publix Promise is mentioned in connection with only one purchase that Plaintiff alleges she made (the beef tenderloin), which is plead insufficiently to establish an injury and therefore a right to a refund under the Publix Promise.[12]  *See e.g., Howard v. Gucci Am. Inc.*, 2023 WL 5747716

---

[11] To the extent that Plaintiff's allegation that she "reasonably relie[s]" on the Publix Promise is intended as consideration, such allegation is belied by the FAC which demonstrates that she continued to shop at Publix even after she began believing that Publix failed to honor the Publix Promise.

[12] The FAC alleges that Publix "failed to disclose that the Publix Promise requires customers to prove and plead their case" (FAC ¶ 231), "failed to disclose that there is a price limit for the Publix

(S.D. Fla. Sept. 6, 2023) (where terms of return policy were not met, retailer not liable under breach of contract for failing to issue return)

Equally perplexing, Plaintiff's damages allegation is entirely divorced from the Publix Promise.  Plaintiff alleges that "as a result of Defendant's "[a]s a result of Defendant's breach of contract, Plaintiff and similar purchasers suffered damages amounting to the difference between the price that was paid and the price that should have been paid."  (FAC ¶ 234) However, Publix's breach of the Publix Promise did not cause any alleged overcharge.  Nor does the Publix Promise offer a refund of "the difference between the price that was paid and the price that should have been paid".  Finally, Plaintiff's damages allegation is contradicted by Plaintiff's admission that she was refunded for certain purchases, despite those refunded purchases being incorporated into Plaintiff's breach of contract claim. Thus, Plaintiff's breach of contract claim must be dismissed.

## CONCLUSION

Plaintiff's Complaint fails to state any viable claims for relief for multiple, independent reasons. As a result, Publix respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety with prejudice or enter such other relief as justice requires.

---

Promise" (FAC ¶ 232), and "failed to disclose that its POS system may change the weights of goods" (FAC ¶ 233) – none of which are relevant allegations to establish a breach of contract.