**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-CV-20767-RAR**

**WENDY KOUTOUZIS**, *on behalf of herself*
*and all other similarly situated individuals*,

      Plaintiff,

v.

**PUBLIX SUPER MARKETS, INC.**,

      Defendant.

_____/

## ORDER GRANTING MOTION TO DISMISS

**THIS CAUSE** is before the Court on Defendant Publix Super Markets, Inc.'s Motion to Dismiss Plaintiff's First Amended Class Action Complaint ("Motion"), [ECF No. 29]. Defendant asks this Court to dismiss Plaintiff's First Amended Class Action Complaint ("Complaint"), [ECF No. 17], on various grounds—among them that Plaintiff lacks Article III standing to prosecute her claims.[1] *See* Mot. at 4, 6–14. The Court agrees. Accordingly, having carefully reviewed the relevant pleadings, the record, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion, [ECF No. 29], is **GRANTED** as set forth herein.

## BACKGROUND

Plaintiff Wendy Koutouzis, a citizen of Florida, brings this action against Defendant Publix Super Markets, Inc. ("Publix" or "Defendant"), on behalf of herself and all other similarly

---

[1] Defendant's Motion is ripe for adjudication. *See* Plaintiff's Opposition to Defendant Publix Super Markets, Inc.'s Motion to Dismiss ("Pl.'s Resp."), [ECF No. 30]; Defendant's Reply in Support of its Motion to Dismiss ("Def.'s Reply"), [ECF No. 33].

situated individuals who were allegedly "overcharged by Publix for foods that were sold through various deceptive pricing schemes[.]"  Compl. ¶¶ 1, 22.[2]  Publix, a Florida corporation, is a supermarket chain operating throughout the Southeastern United States, with 872 of its 1,389 stores located in Florida.  Compl. ¶¶ 23–29.  Plaintiff alleges that "Publix falsely claimed that foods sold by weight . . . weighed materially more than the actual weight of the products."  Compl. ¶ 2.  Specifically, "instead of charging the reduced sale price multiplied by the weight of the product, Publix's point of sale checkout system ('POS') automatically increases the weight of the product[,]" preventing the consumer from receiving the sale price.  Compl. ¶ 3.  In addition to this POS system issue, Plaintiff alleges that Publix "implements other schemes to inflate Publix's revenues" which include advertising the previous week's specials and reduced prices even after the expiration of such sales; placing clearance sale signs in front of products that ring up at their regular prices; and providing incorrect pricing per unit data for baby formula.  *See* Compl. ¶¶ 17–21.

On numerous occasions from April 2024 to April 2025, Plaintiff shopped at Publix and "suffer[ed] financial harm" by such "deceptive trade practices[.]"  Compl. ¶¶ 46–47.  These purchases, including their advertised prices, the price that Plaintiff paid for these items, and the source of the pricing issue, are catalogued in Table 1 below.[3]

---

[2]  The background facts are taken from the Complaint and, at this stage of the proceedings, are taken as true.  *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

[3]  Given the number of purchases alleged in the Complaint, the Court has streamlined the purchases for organizational purposes.  With respect to Purchase Numbers 12 through 17 in Table 1, Plaintiff notes that these were "experiences where she was overcharged and did not document the purchase[.]"  Compl. ¶ 141.  Accordingly, precise information is unavailable for these items, and the Court thus relies on Plaintiff's general allegations.

**Table 1: Plaintiff's Publix Purchases**

| Purchase Number[4] | Publix Item | Advertised Price | Price Purchased | Source of Pricing Issue | Citation from Complaint |
|---|---|---|---|---|---|
| 1 | Kentucky Legend Turkey Breast | $13.98 | $17.48 | POS System | ¶¶ 48–56 |
| 2 | Kentucky Legend Smoked Ham | $10.54 | $14.19 | POS System | ¶¶ 57–61 |
| 3 | Publix Extra Lean Pork Tenderloin | $12.57 | $17.61 | POS System | ¶¶ 62–66 |
| 4 | Spring Mountain Whole Chicken | $10.33 | $12.41 | POS System | ¶¶ 67–70 |
| 5 | Hormell Cure 81 Half Ham | $22.64 | $30.20 | POS System | ¶¶ 71–73 |
| 6 | Second Hormell Cure 81 Half Ham | $22.58 | $30.12 | POS System | ¶¶ 75–76 |
| 7 | Publix Deli Cranberry Cheddar Cheese | $5.39 | $5.99 | POS System | ¶¶ 79–83 |
| 8 | Granny Smith Apples | $3.22 | $4.36 | Expired Sales Sign | ¶¶ 85–88 |
| 9 | Stem Bug Spray | $4.79 | $9.59 | Inaccurate Clearance Sales Sign | ¶¶ 90–91 |
| 10 | Stem Bug Spray | $4.79 | $9.59 | Inaccurate Clearance Price | ¶ 93 |
| 11 | Enfamil ProSobee Baby Formula | $1.59 per ounce | $1.95 per ounce | Incorrect Pricing Per Unit Data | ¶¶ 95–96 |

---

[4] Because Plaintiff purchased the same product more than once in certain instances, the Court has added Purchase Numbers for ease of reference to specific purchases later in this Order.

| 12 | Boars Head Parmigiano Reggiano | The item was "approximately $.50 off per pound and [Plaintiff] did not obtain the sale price." | | | ¶ 142 |
|----|----|----|----|----|----|
| 13 | Beef Tenderloin | The item was "approximately $60, and . . . it was on sale for $19.99 per pound, approximately $5 dollars less than its regular sales price." | | | ¶ 143 |
| 14 | Chicken | The item "was around $12 with the non-sale price per pound on the tag. The receipt claimed that she 'saved' approximately $5." | | | ¶ 144 |
| 15 | Hormel Natural Choice Quarter Ham | $3.00 saving per pound | $17.80 | POS System | ¶¶ 146–148 |
| 16 | Hormel Cure 81 Quarter Ham | $3.00 saving per pound | $13.49 | POS System | ¶¶ 146–148 |
| 17 | Smithfield Anytime Favorites Quarter Sliced Ham | $1.50 saving per pound | $14.93 | POS System | ¶¶ 146–148 |
| 18 | Publix Turkey Breast | $00.40 saving per pound | $31.26 | POS System | ¶¶ 168–170 |

In addition to these allegedly deceptive trade practices resulting in various overcharges, Plaintiff alleges that, in connection with these purchases, Publix has failed to comply with the Publix Promise and the Publix Refund Policy. *See e.g.,* Compl. ¶¶ 98, 125, 128, 136, 160. The Publix Promise "guarantees that if during checkout, the scanned price of an item (excluding alcohol and tobacco products) exceeds the shelf price or advertised price, we will give the customer one of that item free. We will charge the lower price for the remaining items." Compl. ¶ 126 (quoting *Publix Promise*, PUBLIX SUPER MARKETS, https://www.publix.com/pages /policies/publix-promise (last visited Mar. 10, 2026)). The Publix Refund Policy provides that "[i]f for any reason you are unhappy with your purchase, we want to make it right. To return or

exchange an item, simply bring it to the store with a receipt and we will replace it or give you a full refund in the form of your original payment." *Refund Policy*, PUBLIX SUPER MARKETS, https://www.publix.com/pages/policies/refund-policy (last visited Mar. 10, 2026).

Plaintiff obtained a refund for some of her purchases, but not for others.  The refund status of each of Plaintiff's purchases is documented in Table 2 below.

**Table 2: Refund Status of Plaintiff's Publix Purchases**

| Purchase Number[5] | Publix Item | Refund Status | Citation from Complaint |
|---|---|---|---|
| 1 | Kentucky Legend Turkey Breast | No refund obtained. | ¶ 97 |
| 2 | Kentucky Legend Smoked Ham | No refund obtained. | ¶ 97 |
| 3 | Publix Extra Lean Pork Tenderloin | No refund obtained. | ¶ 97 |
| 4 | Springer Mountain Whole Chicken | No refund obtained. | ¶ 97 |
| 5 | Hormell Cure 81 Half Ham | Refund obtained. | ¶ 97 |
| 6 | Second Hormell Cure 81 Half Ham | Refund obtained. | ¶ 97 |
| 7 | Publix Deli Cranberry Cheddar Cheese | Refund obtained. | ¶ 97 |
| 8 | Granny Smith Apples | Refund obtained. | ¶ 97 |
| 9 | Stem Bug Spray | Refund obtained. | ¶¶ 91, 97 |
| 10 | Stem Bug Spray | Refund obtained. | ¶ 97 |
| 11 | Enfamil ProSobee Baby Formula | No refund obtained. | ¶ 97 |
| 12 | Boars Head Parmigiano Reggiano | No refund obtained. | ¶ 142 |
| 13 | Beef Tenderloin | No refund obtained. | ¶ 143 |
| 14 | Chicken | No refund obtained. | ¶ 144 |

---

[5] The Purchase Numbers in this table correspond with those in Table 1.

| 15 | Hormel Natural Choice Quarter Ham | Refund obtained. | ¶ 150 |
| 16 | Hormel Cure 81 Quarter Ham | Refund obtained. | ¶ 150 |
| 17 | Smithfield Anytime Favorites Quarter Sliced Ham | Refund obtained. | ¶ 150 |
| 18 | Publix Turkey Breast | No refund obtained. | N/A |

On February 19, 2025, Plaintiff filed the instant case against Defendant. [ECF No. 1]. Thereafter, on June 2, 2025, Plaintiff filed a First Amended Class Action Complaint, [ECF No. 17], alleging four causes of action against Defendants: (1) violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.*; (2) declaratory judgment pursuant to FDUTPA, Fla. Stat. § 501.201/211 *et seq.*; (3) unjust enrichment; and (4) breach of contract. *See* Compl. ¶¶ 188–234.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting FED. R. CIV. P. 8(a)(2)). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). A motion to dismiss under Rule 12(b)(1) challenges the court's subject-matter jurisdiction, *see* FED. R. CIV. P. 12(b)(1), and such "attacks on subject matter jurisdiction [] come in two forms, 'facial' and 'factual' attacks" *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990)).

"Facial attacks challenge subject matter jurisdiction based on allegations in the complaint,' whereas '[f]actual attacks challenge subject matter jurisdiction in fact, irrespective of

the pleadings." *Gardner v. Mutz*, 962 F.3d 1329, 1340 (11th Cir. 2020) (quoting *Morrison*, 323 F. 3d at 924 n.5).[6] "Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991) (citing *Morast v. Lance*, 807 F.2d 926, 932 n.6 (11th Cir. 1987)).   And "[a] dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).

Article III of the Constitution limits the jurisdiction of federal courts to the adjudication of "Cases" and "Controversies" only.   U.S. Const Art. III § 2; *Stalley ex rel. U.S.*, 524 F.3d at 1232.   This case-or-controversy clause requires that plaintiffs "must establish that they have standing to sue" in federal court. *Raines v. Byrd*, 521 U.S. 811, 818 (1997).   Thus, standing is a "threshold question in every federal case, determining the power of the court to entertain the suit."   *Warth v. Seldin*, 422 U.S. 490, 498 (1975).   To establish the individual standing prerequisites, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).   "The 'foremost' standing requirement is injury in fact." *Trichell v. Midland Credit Management, Inc.*, 964 F.3d 990, 996 (11th Cir. 2020) (quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103 (1998)).   An injury in fact exists if a plaintiff has "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or

---

[6]   Plaintiff advances both facial and factual attacks on Plaintiff's Article III standing.   Mot. at 6–14. However, given that it is apparent from the face of the Complaint that Plaintiff lacks standing, the Court need not address Defendant's factual attacks—nor Defendant's arguments for dismissal under Rule 12(b)(6).   Mot. at 14–24.

hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)).

Beyond establishing that a plaintiff has suffered an injury in fact, he or she must allege a "causal connection between the injury and the conduct complained of"; in other words, the injury must be "fairly traceable to the challenged action of the defendant." *Lujan*, 504 U.S. at 560 (cleaned up). However, Article III standing does not require that defendants be the most immediate cause, or even a proximate cause, of plaintiff's injuries; it requires only that those injuries be fairly traceable to defendants. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014). Lastly, "[t]o satisfy Article III's redressability requirement, '[i]t must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Berrocal v. Att'y Gen. of United States*, 136 F.4th 1043, 1051–52 (11th Cir. 2025) (quoting *Lujan*, 504 U.S. at 561). Put another way, "a decision in [the] plaintiff's favor [must] significantly increase the likelihood that she would obtain relief that directly redresses the injury that she claims to have suffered." *Id*. (quoting *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1301 (11th Cir. 2019)).

These three standing prerequisites must be supported "with the manner and degree of evidence required at the successive stages of the litigation." *Wilding v. DNC Services Corp.*, 941 F.3d 1116, 1124 (11th Cir. 2019) (quoting *Lujan*, 504 U.S. at 561); *see also 31 Foster Children v. Bush*, 329 F.3d 1255, 1263 (11th Cir. 2003) ("How much evidence is necessary to satisfy [the standing requirement] depends on the stage of litigation at which the standing challenge is made."). And "plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). "At the pleading stage, the plaintiff must clearly allege facts demonstrating each of [the standing]

elements." *Gesten v. Burger King Corp.*, No. 17-22541, 2017 WL 4326101, at *1 (S.D. Fla. Sept. 27, 2017) (citing *Spokeo*, 578 U.S. at 338).   However, at this stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (internal quotations and citations omitted).

Further, in the class action context, "the district court must determine that at least one named class representative has Article III standing to raise each class subclaim." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000).   And "Article III requires two related, but distinct, inquiries to determine whether a class representative has standing to represent a class[: (1)] the class representative must satisfy the individual standing prerequisites of the case or controversy requirement[; and (2)] the class representative must also be part of the class and possess the same interest and suffer the same injury as the class members." *Fox v. Ritz-Carlton Hotel Co., L.L.C.*, 977 F.3d 1039, 1046 (11th Cir. 2020) (internal quotations and citations omitted).

## ANALYSIS

Defendant seeks dismissal of Plaintiff's Complaint on numerous grounds.   Namely, Plaintiff's Complaint is a shotgun pleading; Plaintiff lacks standing; and Plaintiff fails to state any viable causes of action.   *See generally*, Mot.   The Court's attention, however, focuses first and foremost on standing, because "[s]tanding is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005) (internal quotations and citations omitted). Thus, "[i]n the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims." *Id.*; *see also Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917,

923 (11th Cir. 2020) (noting that "[w]hether the plaintiffs have standing to sue is a threshold jurisdictional question[.]" (citing *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1083 (11th Cir. 2019)).

Accordingly, the Court begins with an analysis of Defendant's attack on Plaintiff's Article III standing.  And because the Court finds that Plaintiff lacks standing, it "do[es] not reach the merits of plaintiff['s] [claims]." *Cone Corp.*, 921 F.2d at 1203 ("[T]he plaintiffs lack standing to bring this suit; accordingly, the district court . . . should have dismissed the case."); *see also Dep't of Educ. v. Brown*, 600 U.S. 551, 560 (2023) ("We have an obligation to assure ourselves of litigants' standing under Article III before proceeding to the merits of a case." (internal quotations and citations omitted)).

Defendants' Motion asserts that Plaintiff lacks standing for six separate reasons: (1) "she admits she was refunded by Publix for some of the very purchases for which she seeks to recover in this lawsuit;" (2) "she paid the correct total price for the Granny Smith Apples and Enfamil and thus suffered no injury-in-fact from the allegedly-incorrect prices listed for those products;" (3) "she purchased products with actual knowledge of the allegedly-incorrect pricing and thus any injury is traceable to her fully-informed purchasing decision, not Publix's alleged misconduct;" (4) "her additional purchase allegations fail to plausibly establish an injury-in-fact;" (5) "she incurred no injury-in-fact because Publix's policies, of which she was aware, provided her with the option for a full, unconditional money-back guarantee;" and (6) "her admitted actual awareness of Publix's alleged 'deceptive pricing schemes' establishes that Plaintiff is not at risk of being deceived in the future and lacks standing to seek prospective injunctive relief." Mot. at 7.

As explained herein, the Court finds that Plaintiff has failed to establish the first prerequisite to Article III standing: the injury in fact requirement.  This is because she successfully obtained a refund for various purchases, negating any injury that she could have suffered due to Defendant's allegedly deceptive practices.  And as to the other purchases for which she did not receive a refund, Plaintiff fails to explain why she could not avail herself of the Publix Refund Policy.[7]  The Court addresses each category of purchases in turn.

## I.        Plaintiff's Refunded Purchases

With respect to Purchase Numbers 5 through 10 and 15 through 17, Plaintiff lacks standing because her injury was fully redressed by the refunds she obtained.  *See* Table 2: Refund Status of Plaintiff's Publix Purchases ("Table 2").  While "certain harms [like monetary harms] readily qualify as concrete injuries under Article III[,]" *see TransUnion LLC*, 594 U.S. at 425, "where a putative class representative ha[s] received [a] full refund . . . prior to filing [his] lawsuit [] he 'no longer me[ets] the injury-in-fact requirement at the time he filed his complaint' and [thus] 'never had standing to pursue monetary relief in the first place.'"  *Barnett v. Fitness Int'l, LLC*, No. 20-60658, 2020 WL 13566043, at *4 (S.D. Fla. Sept. 17, 2020) (quoting *Luman v. Theismann*, 647 F. App'x 804, 806-07 (9th Cir. 2016)); *see also Sihler v. Glob. E-Trading, LLC*, No. 8:23-CV-1450-VMC-JSS, 2024 WL 3771717, at *9 (M.D. Fla. Aug. 13, 2024) (finding standing because "Plaintiffs have explicitly excluded individuals who received a full refund for the [] products from the putative class." (internal quotations omitted)); *Epstein v.*

---

[7]  Defendant maintains—and Plaintiff does not dispute—that "[t]he Court may consider Publix's Refund Policy given Plaintiff's repeated reference to whether refunds were provided throughout her [Complaint] and her reference to Publix refund policies."  Mot. at 12 n.7; *see also Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) ("A court may consider only the complaint itself and any documents referred to in the complaint which are central to the claims."); *Dawkins*, 796 F. Supp. 3d at 1197 n.7 (noting that "[t]he Eleventh Circuit allows this Court to take judicial notice of [] guarantees" including the Publix Promise and the Publix Refund Policy).  Accordingly, the Court is permitted to consider the Publix Refund Policy.

*JPMorgan Chase & Co.*, No. 13 CIV. 4744 KPF, 2014 WL 1133567, at *7 (S.D.N.Y. Mar. 21, 2014) ("Plaintiff here has failed to establish by a preponderance of the evidence that he has suffered 'an injury in fact' so as to vest this Court with subject matter jurisdiction over his claims . . . [because] Defendants have [] provided Plaintiff with a cashier's check that reimburses Plaintiff for all economic damage he incurred as a result of the alleged breach[.]") .

Here, Plaintiff admits that she "has obtained refunds for the Cranberry Cheddar Cheese, the Hormel Cure 81 Ham, the Granny Smith Apples, and the bug spray", Purchase Numbers 7, 5, 6, 8, 9, and 10, respectively. *See* Compl. ¶ 97; Table 2. Similarly, as to her May 2024 purchase of "three different hams", Purchase Numbers 15, 16, and 17, Plaintiff "successfully obtained a refund for each of the hams." Compl. ¶¶ 146–50; Table 2. Defendant therefore maintains that "as to these purchases, Plaintiff sustained no injury and these purchases provide no basis for Plaintiff to sue." Mot. at 7. The Court agrees, given that Plaintiff's alleged injury with respect to these purchases was "fully redressed by [Publix's] unconditional, direct refund of [these purchases.]" *Barnett*, 2020 WL 13566043, at *5.

In an effort to overcome the lack of economic injury due to Defendant's refunds, Plaintiff asserts, in a wholly conclusory fashion, that "the time, effort, and frustration involved in detecting an error and fighting resistant employees for a refund constitutes a separate, cognizable injury." Pl's Resp. at 8. But as this Court has explained, "'conclusory allegation[s]' [] unsupported by record evidence [are] 'simply not enough'" to establish Article III standing. *Valiente v. Palm Beach Credit Adjustors, Inc.*, No. 25-20858, 2025 WL 3724704, at *5 (S.D. Fla. Dec. 24, 2025) (quoting *Muransky*, 979 F.3d at 933). And more fundamentally, the Eleventh Circuit's caselaw on standing establishes that "whether a plaintiff's assertion of wasted time and effort is a concrete harm depends on whether the wasted time and effort responded to

something that is itself a concrete harm."  *Id.* (quoting *Nelson v. Experian Info. Sols. Inc.*, 144 F.4th 1350, 1355 (11th Cir. 2025) and *Muransky*, 979 F.3d at 931 (internal quotations omitted)). Because Plaintiff is unable to establish that these refunded purchases were themselves a concrete harm, she cannot assert that her wasted time, effort, and frustration independently constitute concrete harm.  Accordingly, Plaintiff lacks standing to sue with respect to Purchases 5 through 10 and 15 through 17.

## II. Plaintiff's Non-Refunded Purchases

Plaintiff is similarly unable to establish that she suffered an injury in fact as to Purchase Numbers 1 through 4, 11 through 14, and 18 because she could have received a full refund pursuant to the Publix Refund Policy.  *See* Table 2.  "[C]ourts in this District have found that no injury-in-fact exists where the defendant offers a money-back guarantee."  *Dawkins*, 796 F. Supp. 3d at 1197; *see also Perez v. Scotts Co. LLC*, No. 24-60516, 2024 WL 5219736, at *3 (S.D. Fla. Nov. 15, 2024) ("[T]his Court agrees with the cases in this District that hold a product's offer of a money-back guarantee moots a plaintiff's economic injury claim under FDUTPA and therefore the plaintiff lacks Article III standing."); *Hardy v. Bed Bath & Beyond, Inc.*, No. 17-22315, 2018 WL 1272687, at *2 (S.D. Fla. Mar. 9, 2018) ("Because, according to her complaint, [Plaintiff] could have received a full refund, the only injury she actually alleges was essentially mooted.").

Plaintiff's Complaint acknowledges the existence of two separate Publix guarantees: the Publix Promise and the Publix Refund Policy.  *See, e.g.*, Compl. ¶¶ 125, 136.  The Publix Promise "guarantees that if during checkout, the scanned price of an item (excluding alcohol and tobacco products) exceeds the shelf price or advertised price, we will give the customer one of that item free.  We will charge the lower price for the remaining items."  Compl. ¶ 126 (quoting

*Publix Promise*, PUBLIX SUPER MARKETS, https://www.publix.com/pages/policies/publix-promise (last visited Mar. 10, 2026)).  And the Publix Refund Policy provides that "[i]f for any reason you are unhappy with your purchase, we want to make it right.  To return or exchange an item, simply bring it to the store with a receipt and we will replace it or give you a full refund in the form of your original payment." *Refund Policy*, PUBLIX SUPER MARKETS, https://www.publix.com/pages/policies/refund-policy (last visited Mar. 10, 2026).

Courts in this District have found that Publix's Refund Policy makes it impossible for plaintiffs to have suffered an economic injury in fact.  For example, in *Valiente v. Publix Super Markets, Inc.*, the court "conclude[d] that the only injury [Plaintiff] actually allege[d] ha[d] essentially been mooted by Publix's money-back guarantee" which "offers customers a full refund for items with which they're unsatisfied, no questions asked."  No. 22-22930, 2023 WL 3620538, at *3 (S.D. Fla. May 24, 2023).  And in *Dawkins*, the court found that "Plaintiff acknowledge[d] the Publix [Refund Policy] and the Publix Promise.  But then in conclusory fashion state[d] that Plaintiff cannot avail herself of the Promise and [Refund Policy]."  796 F. Supp. 3d at 1197.  "In essence, Plaintiff is suing a Defendant who offers a full settlement to remedy the situation." *Id*.

Here, a close examination of Defendant's attempts to obtain a refund is warranted to understand whether Plaintiff could have availed herself of Publix's Refund Policy.  Plaintiff's Complaint simply states that "she did not obtain refunds for the Publix Pork Loins, the Kentucky Legend Turkey, the Kentucky Legend Ham, the Springer Mountain Whole Chicken, or the Enfamil Prosobee baby formula"—Purchase Numbers 3, 1, 2, 4, and 11, respectively.  Compl. ¶ 97.  For the Boars Head Parmigiano Reggiano, Purchase 12, Plaintiff notes that after the cashier insisted she had obtained the sale price, "Plaintiff accepted it and did not obtain a refund."

Compl. ¶ 142.  For the Beef Tenderloin and Chicken, Purchases 13 and 14, after attempting to dispute the price with the cashier, "Plaintiff conceded and did not obtain a refund."  Compl. ¶¶ 143, 144.  And, as for the Publix Turkey Breast which Plaintiff purchased on May 22, 2025, Purchase Number 18, *see* Compl. ¶ 168, Plaintiff does not allege any facts regarding whether she attempted to obtain a refund.

With respect to all of these non-refunded purchases, Plaintiff does not allege that she *could not* obtain such refunds, but rather that she *chose not to*.  In fact, the Complaint describes how "[m]any times, Plaintiff did not seek a refund even if she noticed the overcharge because she knew it would take a significant amount of time to plead her case and obtain a refund, and there was a good chance her request would be denied anyway, especially if the product was a high priced item."  Compl. ¶ 101.  However, Plaintiff cannot allege an injury in fact to maintain Article III standing based on such a voluntary, knowing decision to refuse Defendant's efforts to remedy her injury.  Indeed, "[i]t would be impossible for Plaintiff to have suffered a concrete injury since she could have (and still can) receive compensation for her alleged loss by invoking [] Publix's money-back guarantees[.]"  *Dawkins*, 796 F. Supp. 3d at 1197.

Plaintiff, in her Response, maintains that "she disputed the overcharge with Publix employees[,]" that "their specific response [was] []denial and resistance[], and [that] the ultimate outcome [was] that no refund was provided. (FAC ¶¶ 142-144)."  Pl.'s Resp. at 8–9.  But this statement misconstrues the cited paragraphs of Plaintiff's Complaint.  With respect to the Boars Head Parmigiano Reggiano, "Plaintiff sought a refund for the cheese, but the cashier insisted she obtained the sale price, and Plaintiff accepted it and did not obtain a refund."  Compl. ¶ 142.  As discussed herein, Plaintiff notably does not allege that she *could not* obtain a refund.  And

though the cashier may have erred with respect to the price of the cheese, Plaintiff could have chosen not to buy it or to obtain a refund.

The same can be said with respect to the Beef Tenderloin as Plaintiff chose not to obtain a refund after "the manager stated the meat was too expensive to provide the Publix Promise." Compl. ¶ 143. The Publix Promise and the Publix Refund Policy, however, are two distinct guarantees; Plaintiff does not allege that the manager's failure to provide the Publix Promise with respect to the tenderloin foreclosed her ability to either choose not to purchase the beef or to thereafter obtain a refund.[8] This is especially salient in light of the fact that Plaintiff would have known whether the Publix Promise would be honored *before* purchasing the item, given that this policy applies during checkout only. And lastly, with respect to the Chicken, "Plaintiff explained to the cashier that she didn't see the savings, and that she was overcharged. However, the cashier insisted that she received her savings and again, Plaintiff conceded and did not obtain a refund." Compl. ¶ 144. Once again, nothing in Plaintiff's allegations implies that she was somehow prevented from obtaining a refund.

Plaintiff, in her Response to Defendant's Notice of Supplemental Authority, [ECF No. 34], attempts to distinguish the facts in this case from those in *Dawkins*. *See* Pl.'s Resp. to Def.'s Notice of Supp. Authority ("Pl.'s Resp. to Notice), [ECF No. 35]. She first asserts that the *Dawkins* plaintiff's allegations regarding her inability to avail herself of Publix's Refund Policy were merely "conclusory"—whereas her Complaint "provides specific, non-conclusory allegations of Publix systematically refusing to honor its promises and provide refunds,

---

[8] Nor does Plaintiff allege that these products were "rendered valueless to Plaintiff[.]" *Ramirez v. Kraft Heinz Foods Co.*, 684 F. Supp. 3d 1253, 1259 (S.D. Fla. 2023). Indeed, "[s]he does not allege that she was unable to consume the product or that it was otherwise so flawed as to be rendered useless." *Id.* Despite the fact that she could have sought a refund upon finding that the Publix employee erred in representing the price of the product, she proceeded to purchase these products with knowledge of the potential overpayment, such that "Plaintiff was not deprived of the benefit of her bargain." *Id.* at 1258.

rendering the guarantee illusory, often in a humiliating manner." *Id*. at 1.  But none of Plaintiff's cited paragraphs in the Complaint, Compl. ¶¶ 98, 101, 128–135, 142–144, 165, indicate that Defendant *refused* to provide a refund.  These paragraphs simply allege that Publix makes the refund process arduous, Compl. ¶¶ 98, 101, 165; assert generalized grievances regarding the Publix Promise, Compl. ¶¶ 128–130; maintain that members of the public[9] have suffered alleged harm similar to Plaintiff, Compl. ¶¶ 131–135; and aver that Plaintiff voluntarily accepted the price of the goods, choosing not to pursue a refund, Compl. ¶¶ 142-144.

Plaintiff also states that Publix "systematically refusing to honor its promises and provide refunds . . . often in a humiliating manner" is "conduct [that] combined with Plaintiff's unrefunded economic losses [] establishes a concrete injury."  Pl.'s Resp. to Notice at 1.  But, as explained herein, such a conclusory statement regarding embarrassment or humiliation is insufficient to establish a concrete injury.  *See, e.g., Luce v. LVNV Funding LLC*, No. 21-82143, 2023 WL 1472582, at *5 (S.D. Fla. Jan. 18, 2023), *report and recommendation adopted*, No. 21-82143, 2023 WL 1466815 (S.D. Fla. Feb. 2, 2023) ("Without more, Plaintiff's statements that he feels stress, worry, anxiety, frustration, and anger . . . is not sufficiently concrete and particularized to establish Article III standing."); *Heres v. Medicredit, Inc.*, No. 23-24815, 2024 WL 3291738, at *9 (S.D. Fla. July 3, 2024) ("Plaintiff [] fails to show he suffered a concrete injury where, as here, he alleges experiencing feelings of emotional distress without sufficiently alleging he suffered related tangible injuries.").

---

[9]   Indeed, Plaintiff's Complaint describes how "[s]ince the filing of the initial complaint in this action . . . several consumers have contacted Plaintiff's counsel verifying the schemes as described herein", *see* Compl. ¶ 111, and includes numerous allegations describing the harm suffered by these consumers. *See* Compl. ¶¶ 112–135.  However, given that "[i]t is beyond dispute that in order to have the requisite typicality to represent a class, a named plaintiff must have individual standing to assert the claim[,]" the Court only considers Plaintiff's specific harms at this juncture. *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1351 (11th Cir. 2001) (citation omitted).

Further, Plaintiff argues that "the *Dawkins* court itself distinguished its facts from cases involving 'the sale of weighted products' []—the exact practice at the heart of this lawsuit's central claim of covert weight inflation." Pl.'s Resp. to Notice at 2. But careful review of the *Dawkins* opinion reveals that the court distinguished between weighted and non-weighted products in an entirely different context—namely, in its discussion of whether "unit price represented actual value of the [goods]"—*not* in the standing analysis. *Dawkins*, 796 F. Supp. 3d at 1196 n.5. And the underlying case involving weighted goods cited by the *Dawkins* court, *Kukorinis v. Walmart, Inc.*, does not address a refund policy akin to Defendant's here. No. 19-20592, 2020 WL 13388297, at *3 (S.D. Fla. June 1, 2020).

Lastly, Plaintiff contends that *Dawkins* does not address "[her] distinct claim for breach of a unilateral contract for a free item under the 'Publix Promise', the failure to disclose price limits for Publix Promise refunds, nor the allegations of active, post-lawsuit concealment of the fraud via POS system modifications." Pl.'s Resp. to Notice at 2. However, these allegations implicate the merits of the action. And "[b]ecause we conclude that [Plaintiff] lack[s] standing to sue, we need not (and indeed cannot) consider the merits of [her] [] claim." *Lewis*, 944 F.3d at 1292; *see also Gardner*, 962 F.3d at 1340 ("When a district court [] bypasses standing issues and proceeds directly to the merits of the plaintiffs' [] claim, it assumes its own jurisdiction in precisely the way that *Steel Co.* forbids . . . Independent and dispositive threshold standing issues . . . should [therefore] be decided first." (cleaned up)).

\* \* \*

While shopping for Plaintiff was not a pleasure, Plaintiff has fallen short of establishing a concrete injury sufficient to confer standing to pursue this action.[10] Indeed, for half of Plaintiff's

---

[10] Plaintiff likewise lacks standing to pursue declaratory relief under Count II. "When a plaintiff seeks declaratory and/or injunctive relief, he must establish that: (1) he is likely to suffer a future injury; (2) he

18 alleged Publix purchases made from April 2024 to April 2025, she received a refund. And for the others, she does not allege that she could not receive a refund, but rather that it was either too onerous to do so or that she chose not to. Plaintiff's Class Action Complaint must therefore be dismissed because Plaintiff "cannot represent a class unless [s]he has standing to raise the claims of the class [s]he seeks to represent." *Wooden v. Bd. of Regents of Univ. Sys. of Georgia*, 247 F.3d 1262, 1288 (11th Cir. 2001).

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1.  Defendants' Motion to Dismiss, [ECF No. 29], is **GRANTED**.

2.  Plaintiff's First Amended Complaint, [ECF No. 17], is **DISMISSED** *without prejudice*.

3.  Any other pending motions are **DENIED AS MOOT**.

4.  The Clerk of Court is directed to mark this case **CLOSED**.

**DONE AND ORDERED** in Miami, Florida, this 10th day of March, 2026.

_____

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

---

is likely to suffer the injury at the hands of the defendant; and (3) the relief he seeks will likely prevent the injury from occurring." *Navellier v. Fla.*, 672 F. App'x 925, 928 (11th Cir. 2016) (citing *Cone Corp.*, 921 F.2d at 1203–04). Here, "because [Plaintiff] has failed to plausibly set forth the only injury alleged in [her] complaint—*i.e.*, monetary damages resulting from [her] purported overpayment for the [various purchases]—h[er] claim for injunctive relief must fail as well." *Valiente*, 2023 WL 3620538, at *6.